(No. 45745.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. DELBERT ELLIS, Appellee.

*Opinion filed March 20, 1974.—Rehearing denied May 31, 1974.*

William J. Scott, Attorney General, of Springfield, and Basil Greanias, State's Attorney, of Decatur (James B. Zagel and Charles H. Levad, Assistant Attorneys General, Scott B. Diamond, Assistant State's Attorney, and Harry Bulkeley (Senior Law Student), of counsel), for the People.

John F. McNichols, Deputy Defender, of Springfield (J. Daniel Stewart, Assistant Defender, of counsel), for appellee.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Delbert Ellis, was indicted in the circuit court of Macon County on one count of forgery and two counts of burglary. He entered a plea of guilty to each count, his petition for probation was denied and he was sentenced to three concurrent terms of 2 to 6 years in the penitentiary. The appellate court, holding that section 2—7(1) of the Juvenile Court Act (Ill. Rev. Stat. 1971, ch. 37, par. 702—7(1)) was unconstitutional, reversed the convictions (10 Ill. App. 3d 216) and we granted the People's petition for leave to appeal as a matter of right under Rule 317. 50 Ill.2d R. 317.

At the time the offenses were committed, and when sentenced, defendant was 17 years of age. Section 2—7(1) of the Juvenile Court Act then provided:

"Except as provided in this Section, no boy who was under 17 years of age or girl who was under 18 years of age at the time of the alleged offense may be prosecuted under the criminal laws of this State or for violation of an ordinance of any political subdivision thereof."

In concluding that the section was unconstitutional the appellate court reasoned that the failure to provide the procedural protection of the Juvenile Court Act, before prosecution as an adult, to a 17-year-old male defendant, and the granting of such protection to a similarly situated female defendant, resulted in a denial of equal protection of the laws under section 18 of the Bill of Rights of the Constitution of 1970 (Ill. Const. (1970), art. I, sec. 18), which provides:

"The equal protection of the laws shall not be denied or abridged on account of sex by the State or its units of local government and school districts."

The People, citing *People v. McCalvin,* 55 Ill.2d 161, and *People v. Pardo,* 47 Ill.2d 420 (appeal dismissed for want of a substantial Federal question, *Pardo v. Illinois,* 402 U.S. 992, 29 L. Ed. 2d 158, 91 S. Ct. 2179), contend

that the classification created in section 2—7(1) did not constitute a denial of equal protection under the Federal or Illinois constitutions. They argue, too, that section 18 of the Bill of Rights does not affect the power of the General Assembly to create reasonable classifications.

Defendant argues that *Pardo* and *McCalvin* are readily distinguishable and do not control the decision here for the reason that the crimes in those cases were committed and the sentences imposed prior to the effective date of the Constitution of 1970.

Section 18 of article I was proposed on the floor of the convention as an amendment to the report of the Bill of Rights Committee. (5 Record of Proceedings, Sixth Illinois Constitutional Convention 3669 (hereinafter cited as Proceedings).) It is apparent from the debates that the purpose of the amendment was to guarantee rights for females equal to those of males. (5 Proceedings 3669-3677.) The opponents of the amendment argued that women's rights were adequately protected under section 2 of article I, which provides:

> "No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws."

The proponents of the amendment argued that the courts had interpreted the equal protection clause in such a manner that classifications based on sex were common and proper. (5 Proceedings 3675-3676.) The proponents' argument finds support in *Pardo,* in which we stated:

> "*** 'it requires neither extended discussion nor citation of authority for the proposition that age and the differences existing between the sexes are proper bases for legislative classification.' [Citation.] Illinois has not been unique in distinguishing between males and females on the basis of age for the purpose of determining their juvenile status. (See, *e.g.,* Vernon's Ann. Tex. Civ. Stat., art. 2338—1, sec. 3; 10 Okla. Stat. (1969 supp.)

sec. 1101.) This distinction seems to be neither invidious nor arbitrary and is well within the legislative discretion." 47 Ill.2d 420, 424.

A member of the convention stated the proponents' position in this manner:

> "But I might point out then that this equal protection clause in section 2 has never been held to apply to women in the same way, say, that it has been held to apply to blacks; and until that time comes—and that may be another long case-by-case development—I think the need for this amendment to make explicit that we do mean that women cannot be denied this type of equality is necessary." 5 Proceedings 3676.

The section was adopted by a vote of 94 "for," 7 "against," and 5 "pass."

As the proponents of section 18 recognized, there are two standards of review employed to determine the validity of statutory classifications under the equal protection clause. (See generally Developments in the Law— Equal Protection, 82 Harv. L. Rev. 1065 (1969); Sex Discrimination and Equal Protection: Do We Need a Constitutional Amendment?, 84 Harv. L. Rev. 1499 (1971); Comment, Are Sex-Based Classifications Constitutionally Suspect?, 66 Nw. U.L. Rev. 481 (1971).) The basic standard, permissive review, permits classifications which are rationally related to the legitimate governmental objective (*People ex rel. City of Salem v. McMackin,* 53 Ill.2d 347, 363), and the burden is on the party challenging the validity of the classification to prove that it is arbitrary. (*Jacobs v. City of Chicago,* 53 Ill.2d 421.) When, however, a statute used "suspect classifications," such as race (*McLaughlin v. Florida,* 379 U.S. 184, 13 L. Ed. 2d 222, 85 S. Ct. 283), or national ancestry (*Korematsu v. United States,* 323 U.S. 214, 89 L. Ed. 194, 65 S. Ct. 193), to distinguish between individuals, the Supreme Court applied the active review standard which placed the burden on the State to show that the distinction was related to some compelling State purpose. See Develop-

ments in the Law—Equal Protection, 82 Harv. L. Rev. 1065, 1087-1131.

Although neither the Supreme Court nor this court has found a statutory classification by sex to be a suspect classification, in *Frontiero v. Richardson* (1973), 411 U.S. 677, 36 L. Ed. 2d 583, 93 S. Ct. 1764, four Justices concluded that "*** classifications based upon sex, like classifications based upon race, alienage, or national origin, are inherently suspect, and must therefore be subjected to strict judicial scrutiny." (411 U.S. at 688, 36 L. Ed. 2d at 589, 93 S. Ct. at 1771.) Three Justices, concurring, felt that in deciding the case it was unnecessary for the court to characterize sex as a suspect classification, and that a "general categorizing of sex classifications as invoking the strictest test of judicial scrutiny" should be deferred until action is completed on the "Equal Rights Amendment, which if adopted will resolve the substance of this precise question." (411 U.S. at 692, 36 L. Ed. 2d at 595, 93 S. Ct. at 1773.) Section 1 of the Equal Rights Amendment, passed by Congress on March 22, 1972, and submitted to the legislatures of the States for ratification, declares that "equality of rights under the law shall not be denied or abridged by the United States or by any State on account of sex." H.R.J. Res. No. 208, 92d Cong. 2d Sess. (1972).

In *Oak Park Federal Savings and Loan Association v. Village of Oak Park,* 54 Ill.2d 200, this court said "In the matter of constitutional construction, it is incumbent upon the court to give meaning to every section and clause of the instrument." (54 Ill.2d 200, at 203.) In contrast to the Federal Constitution, which, thus far, does not contain the Equal Rights Amendment, the Constitution of 1970 contains section 18 of article I, and in view of its explicit language, and the debates, we find inescapable the conclusion that it was intended to supplement and expand the guaranties of the equal protection provision of the Bill of Rights and requires us to hold that a classification based

on sex is a "suspect classification" which, to be held valid, must withstand "strict judicial scrutiny."

Upon consideration of the authorities, we find no compelling State interest which justifies treating a 17-year-old boy differently from a 17-year-old girl under the Juvenile Court Act, and hold that section 2—7(1) of the Juvenile Court Act, in force at the time that the crimes were committed and when defendant was sentenced, was invalid. Apparently the General Assembly found that there was either no further justification or authority to maintain the distinction, and amended section 2—7(1), effective January 1, 1973, to read "no minor who was under 17 years of age." (Ill. Rev. Stat., 1972 Supp., ch. 37, par. 702—7(1).) We note, parenthetically, that an appendix to defendant's brief shows that only Texas continues to draw an age distinction between males and females with respect to juvenile delinquency proceedings. See Tex. Rev. Civ. Stat. (1971), art. 2338—1, sec. 3.

We turn now to the question whether the effect of our holding section 2—7(1) invalid is to extend its application to 17-year-old boys, to hold it inapplicable to 17-year-old girls, or to eliminate it. In *Winter v. Barrett,* 352 Ill. 441, the court refused to extend legislation to classes not previously covered, and in *People ex rel. Slawek v. Covenant Children's Home,* 52 Ill.2d 20, this court extended the coverage of the procedural provisions of the Illinois Adoption Act (Ill. Rev. Stat. 1969, ch. 4) to the putative father of an illegitimate child, holding invalid only those provisions of the Act which were in conflict with certain decisions of the Supreme Court. In discussing the problem presented, one author has commented: "In evaluating the remedial alternatives of extension or elimination, a court must consider whether the legislature is better equipped to deal with the ramifications of extension. Courts may prefer simply to eliminate these laws (based on sex) rather than extend them. An alternative

would be for courts to eliminate the laws (based on sex) but delay relief for a reasonable period to allow legislatures to redefine legal relationships." (Sex Discrimination and Equal Protection: Do We Need a Constitutional Amendment?, 84 Harv. L. Rev. 1499, 1514 (1971).) *Brown v. Board of Education,* 349 U.S. 294, 99 L. Ed. 1083, 75 S. Ct. 753, and *Reynolds v. Sims,* 377 U.S. 533, 12 L. Ed. 2d 506, 84 S. Ct. 1362, are examples of delayed equal protection relief. See also Developments in the Law—Equal Protection, 82 Harv. L. Rev. 1065, 1137-1158.

In view of the constitutional provision, and the amendment to section 2—7(1), we conclude that the effect of the deletion of the invalid classification from the statute is to render the statute inapplicable to both males and females who were not "under the age of 17 years," and that the failure to consider defendant eligible for treatment as a minor under its provisions did not deprive him of equal protection of the laws.

For the reasons stated the judgment of the appellate court is reversed and the judgment of the circuit court of Macon County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*