61 Ill.2d 40 (1975)
329 N.E.2d 234
In re ESTATE OF LOUIS KARAS.  (Mary Sodermark, Appellant,
v.
Evangelia Karas, Appellee.)  In re ESTATE OF ROBERT WOODS.  (Margaret Marie Collins, Appellant,
v.
Addie Wheeler, Adm'r, Appellee.)
Nos. 46986, 47092 cons.
Supreme Court of Illinois.
Opinion filed June 2, 1975.
*41 *42 James R. Phelps and Wayne R. Andersen, of Burditt and Calkins, of Chicago, for appellant.
Gerald W. Shea, of Berwyn (Robert J. Lifton, of Neistein, Richman, Hauslinger & Young, Ltd., of Chicago, of counsel), for appellee.
Mary Reardon Hooton, of Chicago, for appellant.
Schwartzberg, Barnett & Schwartzberg, Goodman, Krasner & Kipnis, and Zaidenberg, Hoffman & Schoenfeld, all of Chicago (Benjamin H. Cohen and Hugh J. Schwartzberg, of counsel), for appellee.
Devereux Bowly and Charles Linn, Legal Assistance Foundation of Chicago, and James Weill and Jane Stevens, Legal Assistance Foundation, all of Chicago (John Henry Schlegel, of Buffalo, New York, and Joseph Bomba (law student), of counsel), for amicus curiae Deta Mona Trimble and Jessie Trimble.
Judgments affirmed.
MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:
These consolidated appeals present the common issue of whether an acknowledged illegitimate child may inherit from her father who died intestate never having married the child's mother. A subsidiary issue involves the right of *43 an illegitimate to be appointed the administrator of the estate under these circumstances.
The relevant sections of the Probate Act read as follows:
"Sec. 12. Illegitimates.
* * *
An illegitimate child is heir of his mother and of any maternal ancestor, and of any person from whom his mother might have inherited, if living; and the lawful issue of an illegitimate person shall represent such person and take, by descent, any estate which the parent would have taken, if living. A child who was illegitimate whose parents intermarry and who is acknowledged by the father as the father's child is legitimate." Ill. Rev. Stat. 1973, ch. 3, par. 12.
"Sec. 96. Persons entitled to preference in obtaining letters.) The following persons are entitled to preference in the following order in obtaining the issuance of letters of administration * * *:
* * *
(2) The children or any person nominated by them." Ill. Rev. Stat. 1973, ch. 3, par. 96.
In cause No. 46986 Louis Karas died intestate. The circuit court of Cook County entered an order declaring Evangelia Karas, his widow, to be his only heir-at-law. Thereafter Mary Sodermark, petitioner, sought to vacate the order of heirship claiming that she was the child of Louis Karas and Estelle Ross, who never married. The Sodermark petition alleged that Estelle Ross had been institutionalized for psychiatric reasons and apparently upon her release had disappeared. The petition further averred that Mary Sodermark had been acknowledged as the child of Louis Karas and that he had contributed to her support while she lived with an aunt. The petition asserted that Louis Karas and his wife, Evangelia, lived for a time with Mary Sodermark, her husband and family and that Louis Karas had contributed a downpayment to the purchase of the Sodermark's house. The circuit court granted Evangelia's motion to strike and dismiss the *44 Sodermark petition. The appellate court affirmed (In re Estate of Karas, 21 Ill. App.3d 564), and we granted leave to appeal.
In cause No. 47092 Robert Woods died intestate at the age of 81. He left no surviving spouse and no legitimate children or descendants thereof. The circuit court of Cook County determined that there existed certain collateral heirs-at-law of the deceased. Margaret Marie Collins, petitioner, then attempted to obtain letters of administration and a declaration of heirship on her behalf. She asserted in her petition that she was the acknowledged illegitimate daughter of the deceased and a lawful heir to his $37,000 estate. The circuit court sustained the motion of certain collateral heirs-at-law to strike and dismiss the Collins' petition, and we granted direct appeal (50 Ill.2d R. 302(b)).
We have permitted the filing of an amicus brief in these consolidated cases. The amicus has pending in this court a direct appeal involving similar issues. (In re Estate of Gordon, No. 47339.) The illegitimate in Gordon is a minor. Amicus asserts that prior to the death of the unmarried father there had been a judicial order adjudicating paternity and ordering that he support this child.
As accepted by the motions to strike and dismiss the petitions, for the purpose of these appeals Mary Sodermark and Margaret Marie Collins are the acknowledged illegitimate children of the respective decedents, who never married the natural mothers. (Gertz v. Campbell (1973), 55 Ill.2d 84, 87.) Thus they have not been legitimatized in accord with section 12 of the Probate Act, and under prior case law (Krupp v. Sackwitz (1961), 30 Ill. App.2d 450, appeal denied, 21 Ill.2d 621) are not considered heirs of their fathers, who died intestate.
At common law an illegitimate could not inherit. (Blacklaws v. Milne (1876), 82 Ill. 505, 506.) By statute the result of this rule was ameliorated. (Ill. Ann. Stat., ch. 3, sec. 12, Historical Note, at 64 (Smith-Hurd 1961); see *45 also 2 Horner, Probate Practice and Estates, secs. 1348, 1350-51 (4th ed. 1960).) In Smith v. Garber (1918), 286 Ill. 67, the court, in discussing the predecessor provisions of section 12 of the Probate Act, stated:
"`Sections 2 and 3 of our Statute of Descent were enacted for the purpose of obviating the undue severity of the common law and of erecting a rule more consonant with justice to an innocent and unfortunate class. Section 2 * * * abrogates the common law rule that an illegitimate is the child of nobody and could not take property by inheritance, even from its own mother.' (Robinson v. Ruprecht, 191 Ill. 424.) Under the common law an illegitimate was considered filius nullius. (1 Blackstone's Com. * 459.) Under the statutes passed in this State in relation to illegitimate children, `an illegitimate person is recognized as the child of his mother, as regards the descent of property.' (Miller v. Williams, 66 Ill. 91.) In Bales v. Elder, 118 Ill. 436, this court said that it was the purpose of the legislature in enacting the statute as to illegitimate children, to remove the common law disability of inheritance and place them more nearly on a level with legitimates. (See, also, Jenkins v. Drane, 121 Ill. 217; Chambers v. Chambers, 249 id. 126.) In Robinson v. Ruprecht, supra, this court said (p. 433): `The rule [of the common law] visited the sins of the parents upon the unoffending offspring, and could not long survive the truer sense of justice and broader sense of charity that came with the advancing enlightenment and civilization of the race.'" 286 Ill. 67, 70-71.
It is argued in the Sodermark appeal that this court modify the common law rule that an acknowledged illegitimate may not be an heir of the intestate father's estate. She urges that she be allowed to inherit to the *46 extent of a legitimate child. This is not a tenable argument.
For nearly 150 years this State by statute has mitigated the effect of the common law rule prohibiting inheritance by illegitimates. While discussing other Probate Act provisions, this court has held that "The regulation of the descent of property and of the right to devise property as well as the method of conveying and the manner of creating estates and the character and quality of estates created, is purely statutory and entirely within the control of the legislature. [Citations.] Being wholly statutory the rules of descent may be changed by the legislature in its discretion, and conditions or burdens may be imposed upon the right of succession." (Steinhagen v. Trull (1926), 320 Ill. 382, 387; see also Jahnke v. Selle (1938), 368 Ill. 268, 271.) Moreover, Miller v. Pennington (1905), 218 Ill. 220, involved litigation contesting certain property of the intestate decedent. He had fathered two illegitimate sons by a woman whom he subsequently married. The question presented concerned whether these sons could be deemed to be legitimatized and could therefore share as heirs-at-law with the other legitimate children of the father. The descent statute, considered by the court (Hurd's Stat. 1899, ch. 39, sec. 3) in determining whether these sons had been legitimatized, is presently incorporated within section 12 of the Probate Act. The court there held that the rights of the sons who had been born illegitimate were to be determined under the pertinent provision of the descent statute. The aforegoing authorities support the conclusion that expansion of inheritance rights of an illegitimate child in the estate of the father who dies intestate must be left to legislative modification. Therefore consideration of the applicability of the common law to intestate succession is of no relevance. Campbell v. McLain (1925), 318 Ill. 610, 612-13.
Petitioners and amicus urge that the statutory scheme which precludes the inheritance by an acknowledged illegitimate from the estate of the intestate father violates *47 the Federal and State constitutional provisions guaranteeing equal protection and due process of law. In so arguing petitioners and amicus recognize the possible adverse implications of the United States Supreme Court decision in Labine v. Vincent (1971), 401 U.S. 532, 28 L.Ed.2d 288, 91 S.Ct. 1017.
In Labine v. Vincent the acknowledged illegitimate child had been precluded under Louisiana law from inheriting on an equal basis with legitimate children, if the father died intestate. It was argued that this statutory limitation was contrary to Federally secured rights to equal protection and due process. In a 5-to-4 decision the Supreme Court rejected these claims, stating that "the choices reflected by the intestate succession statute are choices which it is within the power of the State to make. The Federal Constitution does not give this Court the power to overturn the State's choice under the guise of constitutional interpretation because the Justices of this Court believe that they can provide better rules." (401 U.S. 532, 537, 28 L.Ed.2d 288, 293, 91 S.Ct. 1017, 1020.) The Supreme Court further concluded that Louisiana's intestate succession laws had not created "an insurmountable barrier" to the acknowledged illegitimate child inheriting from the father. Alternatives existed, such as the execution of a will or marriage to the child's mother, which would have obviated the bar to the inheritance. As later explained, Labine v. Vincent "reflected, in major part, the traditional deference to a State's prerogative to regulate the disposition at death of property within its borders. * * * The Court has long afforded broad scope to state discretion in this area." Weber v. Aetna Casualty & Surety Co. (1972), 406 U.S. 164, 170, 31 L.Ed.2d 768, 776, 92 S.Ct. 1400.
Under traditional concepts of Federal equal protection a legislative classification will be upheld if it bears a rational relationship to a valid governmental purpose, and the burden of rebutting the presumptive validity of the *48 classification rests upon the party challenging its constitutionality. (People v. Sherman (1974), 57 Ill.2d 1, 4.) When the classification, however, affects fundamental rights (see Hoskins v. Walker (1974), 57 Ill.2d 503, 508) or involves a "suspect classification" (People v. Ellis (1974), 57 Ill.2d 127, 131), the burden is placed upon the State to demonstrate that the distinction is justified by a compelling governmental interest.
Petitioners and amicus expend much effort in attempting to refute the present application of Labine v. Vincent. They maintain that the rational bases suggested in that opinion to justify the classification cannot be applied in these cases. They also urge that other Supreme Court decisions have eroded the validity of that decision.
The Supreme Court noted that Louisiana's intestate succession scheme was rationally based on its interests to encourage family relationships and to establish a method of property disposition. (Labine v. Vincent, 401 U.S. 532, 536 n. 6, 28 L.Ed.2d 288, 292 n. 6, 91 S.Ct. 1017, 1019 n. 6.) Petitioners and amicus argue that Illinois statutes fail to disclose this State's interest in the promotion of family relationships as did the Louisiana statutes. We cannot accept this hypothesis. And we do not believe that Illinois has any lesser interest than Louisiana in regulating the transfer of a decedent's property in its jurisdiction. It is our opinion that petitioners and amicus have failed to detract from the impact of Labine v. Vincent in these regards.
Several Supreme Court decisions have been cited whose thrust is said to have severely lessened the present vitality of Labine v. Vincent. Petitioners and amicus cite Levy v. Louisiana (1968), 391 U.S. 68, 20 L.Ed.2d 436, 88 S.Ct. 1509, which invalidated a State law precluding il-illegitimate children from seeking a recovery for the wrongful death of their mother when such an action could be maintained by legitimate children, and Glona v. American Guarantee & Liability Insurance Co. (1968), 391 U.S. 73, *49 20 L.Ed.2d 441, 88 S.Ct. 1515, which nullified a statute that had been construed as prohibiting the mother of an illegitimate child from maintaining an action for his wrongful death. The Supreme Court, however, expressly found that the rationale of its prior decisions in Levy and Glona did not extend to the situation presented in Labine v. Vincent, 401 U.S. 532, 535, 28 L.Ed.2d 288, 292, 91 S.Ct. 1017, 1019. Petitioners and amicus further cite Weber v. Aetna Casualty & Surety Co. (1972), 406 U.S. 164, 31 L.Ed.2d 768, 92 S.Ct. 1400, which held that a dependent unacknowledged illegitimate child could not be deprived of workmen's compensation benefits accruing to dependent legitimate children as a result of the death of the natural father; Gomez v. Perez (1973), 409 U.S. 535, 35 L.Ed.2d 56, 93 S.Ct. 872, which precluded a State from denying relief to an illegitimate child seeking support from his natural father when such relief was afforded to a legitimate child; New Jersey Welfare Rights Organization v. Cahill (1973), 411 U.S. 619, 36 L.Ed.2d 543, 93 S.Ct. 1700, which voided certain statutory provisions of a State-aid program to poor families limiting benefits to married couples with minor children, thereby, in effect, denying benefits to illegitimate children; and Jimenez v. Weinberger (1974), 417 U.S. 628, 41 L.Ed.2d 363, 94 S.Ct. 2496, which held unconstitutional a statutory program denying benefits to illegitimate children born after the onset of the parent's disability, while permitting benefits to illegitimate children who were similarly born, if the latter group of children could inherit under State intestacy laws, could be legitimated under State law or were considered illegitimate only as a result of a formal defect in their parents' marriage.
We have examined these decisions and do not find the constitutional impact of Labine v. Vincent to have been lessened. As previously set forth, Weber v. Aetna Casualty & Surety Co. explained Labine v. Vincent, and expressed no dissatisfaction with that decision.
*50 In asserting that the present Illinois classification of illegitimates is violative of Federal constitutional principles, petitioners and amicus recommend that this court apply the stricter equal protection test which would require the State to justify the classification by a compelling governmental interest. It is claimed that the present classification is racially and sexually discriminatory and that illegitimacy is itself a suspect classification, thereby necessitating application of the stricter constitutional standard.
In support of the position that the statutory framework is racially discriminatory, petitioner in cause No. 47092 sets forth various statistical sources which she says indicate that an excessively disproportionate share of illegitimate children were born to blacks and other minorities as compared to Caucasians. In light of these statistics this petitioner concludes that section 12 of the Probate Act has evolved to the extent that it "fits into a pattern of legislation which often is only a thinly disguised cover for racial discrimination." A comparable claim of racial discrimination, predicated on similar statistics, was presented by the amicus in Labine v. Vincent with no apparent success. Moreover, section 12 of the Probate Act does not contain any racial classification and affects all members of the class of illegitimates without regard to racial heritage. Such a statute, without more, would not appear in and of itself to substantiate a claim that it is racially discriminatory merely because the bare statistical possibility exists that at any given time it could incidentally tend to affect to a greater extent a particular racial group within the general class. The alleged deprivation of which petitioner complains is remedied through the simple expedient of testamentary disposition by means of a will. And no claim is advanced that any racial group is restricted in any judicially cognizable manner from utilizing this procedure.
The argument that section 12 sexually discriminates *51 so as to give rise to a stricter approach to Federal equal protection principles is also unpersuasive. We are cognizant of the recent decision wherein the Supreme Court struck down a Social Security provision which had precluded survivor's benefits to an unemployed widower who remained at home to care for his minor child, while permitting such payments to a similarly situated widow. The court there held that this classification was not rational under the statute's intended purpose. (Weinberger v. Wiesenfeld (1975), 420 U.S. 636, 43 L.Ed.2d 514, 95 S.Ct. 1225.) However, while the claim is made that a classification by sex requires a more stringent application of equal protection principles, we find that only four members of the Supreme Court have accepted this position. (Frontiero v. Richardson (1973), 411 U.S. 677, 36 L.Ed.2d 583, 93 S.Ct. 1764 (plurality opinion); see also Stanton v. Stanton (1975), 421 U.S. 7, 43 L.Ed.2d 688, 95 S.Ct. 1373; Schlesinger v. Ballard (1975), 419 U.S. 498, 42 L.Ed.2d 610, 95 S.Ct. 572 (Brennan, J., dissenting); Kahn v. Shevin (1974), 416 U.S. 351, 40 L.Ed.2d 189, 94 S.Ct. 1734 (Brennan, J., dissenting).) We are unwilling to decide that all classifications based upon sex require that the State establish a compelling governmental interest under the Federal equal protection clause.
No decision has been cited in which a classification based on illegitimacy has been expressly held to be a suspect classification. Rather the decisions concerning illegitimacy previously set forth would seem to have been determined on whether or not the classification could be said to be predicated on a rational basis. In Jimenez v. Weinberger (1974), 417 U.S. 628, 41 L.Ed.2d 363, 94 S.Ct. 2496, the Supreme Court stated it need not reach the argument as to whether a stricter equal protection standard was applicable in order to determine the validity of a classification premised on illegitimacy. Moreover, the amicus brief filed in Labine v. Vincent suggests the *52 argument was advanced that stricter equal protection principles be utilized when examining a classification based on illegitimacy. Thus for several of the comparable reasons expressed in our discussion of the issues regarding alleged race and sex discrimination stemming from application of section 12 of the Probate Act, we are unable to presently conclude that a classification based on illegitimacy is a suspect classification under Federal constitutional interpretation.
The precise issue set forth in Labine v. Vincent is present in these appeals, i.e., can an acknowledged illegitimate be treated differently than a legitimate child and thereby, in effect, be precluded from sharing in its father's estate by State laws governing intestate succession. In each of these specific appeals no "insurmountable barrier" to Mary Sodermark and Margaret Marie Collins sharing in their fathers' estates has been created. In both instances the deceased fathers apparently lived for a substantial number of years. Since Louis Karas was survived by his spouse, he could have devised as much as two thirds of his estate to Mary Sodermark. (Ill. Rev. Stat. 1973, ch. 3, par. 16; see Montgomery v. Michaels (1973), 54 Ill.2d 532, 534-5.) Because Robert Woods had no surviving spouse, he could have left his entire estate to Margaret Marie Collins if he had utilized the simple formalities of a will.
We further recognize that the State maintains an interest in prohibiting spurious claims against an estate. The parties to these appeals tend to agree that proof of a lineal relationship is more readily ascertainable when dealing with maternal ancestors. It is suggested that proof of paternal relationship may not be so readily ascertainable but that such considerations should be decided individually on the facts of each case. While establishing paternity in a proceeding to determine heirship is possible, situations may arise which are fraught with fraudulent circumstances. There exists the possibility that an illegitimate "grandson" *53 may seek to inherit from his "grandfather" who dies not only intestate but also after the death of his own son and without knowledge of the existence of the illegitimate. Similar circumstances might also arise in which illegitimates, claiming a collateral relationship, would seek rights to the estates of paternal intestate kindred. (See generally Gregory v. County of LaSalle (1968), 91 Ill. App.2d 290.) There also may be situations in which a "father's" testamentary disposition is challenged on behalf of an illegitimate child who was born after the will was executed, thereby possibly permitting the child to recover a share of the estate equivalent to that allowed if the "father" had died intestate. Ill. Rev. Stat. 1973, ch. 3, par. 48; 2 Horner, Probate Practice and Estates sec. 1331 (4th ed. 1960).
In summary, to accept the numerous arguments raised by petitioners and amicus in regard to Federal equal protection principles would result in this court's placing strictures on Labine v. Vincent. "But, of course, a State may not impose such greater restrictions as a matter of federal constitutional law when this Court [United States Supreme Court] specifically refrains from imposing them." (Emphasis in original.) Oregon v. Haas (1975), 420 U.S. 714, 719, 43 L.Ed.2d 570, 576, 95 S.Ct. 1215, 1219.
There remains the contention that section 12 of the Probate Act is unconstitutional because it violates State constitutional guarantees that "equal protection of the laws shall not be denied or abridged on account of sex * * *." (Ill. Const. (1970), art. I, sec. 18.) In People v. Ellis (1974), 57 Ill.2d 127, 132-33, we construed this provision as rendering any classification based on sex to be a "suspect classification," thus subjecting it to "strict judicial scrutiny" and requiring the existence of a compelling State interest to justify the classification. See also Phelps v. Bing (1974), 58 Ill.2d 32.
Petitioner in cause No. 47092 first claims that section *54 12(4) of the Probate Act discriminates against the father and his descendants when his illegitimate child dies intestate leaving no spouse or descendants. If this situation occurs, petitioner says the father and his descendants are precluded from sharing in the child's estate while the mother and her descendants may share in the estate. A comparable attack is made upon sections 12(5) to 12(7), which generally concern inheritance from the estate of an illegitimate by maternal kindred while omitting consideration of paternal kindred. Petitioner also maintains that section 12 requires a mother to draw a will in order to disinherit her children while a father of an illegitimate child, who is not legitimized by the procedures of section 12, need not do so. Conversely, if the father of the illegitimate wishes the illegitimate child to share in his estate he must execute a will, whereas the mother need not resort to this course of action. Finally, petitioner argues that she is injured by limiting her inheritance to the estate of her mother who dies intestate or her maternal ancestors and by precluding her inheritance from her father or his ancestors. She claims that she should either inherit from both or inherit from neither, and she concludes that as a result of section 12 of the Probate Act she is injured by the sexual discrimination against each of her parents.
No contention is asserted that section 12 of the Probate Act results in any sexual discrimination as between similarly situated males and females who seek inheritance from the estates of their fathers or other paternal kindred. Under section 12 no discrimination inures to an illegitimate as a result of the illegitimate's sex. The question therefore presented in whether under these circumstances one may assert a claim of discrimination based upon the sex of another person pursuant to section 18 of article I of the State Constitution.
In our decisions of Ellis and Bing the individuals were treated differently on the basis of their sex because of classifications in the Juvenile Court Act and Marriage Act. *55 Neither case involved a situation wherein the affected individuals asserted a constitutional deprivation based solely on the sex of another person, as in these appeals. The official explanation of section 18 of article I recites that "no government in Illinois may deny equal protection of the law to anyone because of his or her sex." (7 Record of Proceedings, Sixth Illinois Constitutional Convention 2688.) This explication indicates that State constitutional issues raising questions of classifications based on sexual differentiation may be raised by individuals who are thereby affected as a result of their own sex. For this reason, we are of the opinion that petitioner's State constitutional claim is without merit.
Amicus argues that both parents have a duty to support a child and if one parent dies the survivor's duty is necessarily increased. Amicus says that section 12 invidiously discriminates against the surviving mother in preference to the surviving father of the illegitimate child. It is argued that the father is aided in his obligation of support because the child may inherit from the mother. Conversely, amicus argues, the mother is not aided and, in fact, is burdened, for the child cannot inherit from the father and support from the father is no longer available. Amicus concludes that section 12 "discriminates against women by failing to provide for their children a legal right of inheritance equivalent to that granted to the children of surviving male parents." To buttress this argument amicus refers only to sections 9 and 11 of the Probate Act (ch. 3, pars. 9 and 11), which amicus asserts are designed to prevent a decedent's closest relatives from becoming wards of the State.
We have examined these provisions and are unable to interpret these sections as intending to create a statutory scheme for financial support. Section 9, in pertinent part, merely says that the Probate Act shall be liberally construed. Section 11 establishes an intestate succession for the devolution of property not involving illegitimates. *56 There is no basis evident from the language employed in either section which permits an interpretation that these provisions were intended to alleviate the possibility that certain close relatives of the decedent would seek public assistance. Obviously the application of section 11 provides the basis wherein certain relatives may assure their living standard or even elevate it by their inheritance. But this provision also allows inheritance to wealthy relations to the exclusion of impoverished individuals who may be only slightly more remote in their relationship to the decedent. Moreover, relations of equal degree similarly inherit even though there may exist extreme divergence in their financial status.
Having concluded that the petitioners were not denied equal protection of the law, we do not find that they were deprived of due process of law by the trial courts' refusals to permit a hearing wherein they might seek to establish the paternity of the decedents. Cf. Stanley v. Illinois (1972), 405 U.S. 645, 31 L.Ed.2d 551, 92 S.Ct. 1208.
There remains the contention advanced by petitioner in cause No. 47092 that she has a preference in issuance of letters of administration as set forth in section 96(2) of the Probate Act (ch. 3, par. 96(2)). In determining that petitioner may not inherit from her father under the circumstances presented in this case, we do not believe it logical that she should be allowed to participate in the administration of his estate. See Myatt v. Myatt (1867), 44 Ill. 473, 476.
Accordingly, the judgment of the appellate court in cause No. 46986 is affirmed. The judgment of the circuit court of Cook County in cause No. 47092 is affirmed.
Judgments affirmed.