THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DAVID MORRISON, Defendant-Appellant.

Third District   No. 3—90—0635

Opinion filed December 24, 1991.

Thomas A. Karalis, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Burmila, Jr., State's Attorney, of Joliet (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCUSKEY delivered the opinion of the court:

Defendant, David Morrison, appeals from his conviction of child abduction. Defendant contends that the child-abduction statute violates the due process and equal protection clauses of the United States and Illinois Constitutions. We find the statute constitutional, but we conclude that it was unconstitutionally applied to defendant. Therefore, we reverse the conviction.

Defendant was charged by information with child abduction (Ill. Rev. Stat. 1989, ch. 38, par. 10—5(b)(3)) following the removal of Christopher Morrison from the custody of his mother, Teresa Teitle. It is undisputed that defendant is the natural father of Christopher. However, neither Teresa Teitle nor the defendant ever instituted paternity proceedings. Also, defendant and Teitle were never married to each other. At the time of the incident, Teitle and defendant had lived together for 4½ years. Christopher was two years old and had lived with Teitle and defendant since his birth. Defendant financially supported Christopher during this entire period of time.

On Thursday, May 3, 1990, while defendant was at work, Teitle took Christopher and a daughter from a previous marriage and left the residence she shared with defendant to move in with her mother. Teitle testified that she intended to permanently leave defendant. Upon returning from work, defendant discovered that no one was home and that Teitle's and Christopher's clothing had been removed. Presuming that Teitle had left him, defendant drove to Teitle's mother's house.

Teitle testified that defendant entered the house and asked her if she was leaving him. She testified that upon her answering "yes," defendant picked up Christopher, took some diapers, told Teitle she would "never see [Christopher] again," and left the house.

Defendant disputes Teitle's version of the incident. He testified that he knocked at the door of Teitle's mother's house and was let in

by Teitle. He asked her what was going on, and she replied that she was leaving him. Defendant asked "why," but testified that Teitle "didn't really give me any kind of explanation." Defendant informed Teitle that he was going to take Christopher for the weekend, since his work had been cancelled for Friday, Saturday, and Sunday. Defendant testified that he and Teitle put shoes and a coat on Christopher, and Teitle provided defendant with some diapers.

Defendant testified that in the presence of Teitle, he used the telephone to call his sister to find a new place for him to stay with Christopher. Defendant then walked outside with Christopher, placed him in the car, and drove away. Defendant was arrested the following evening at his sister's house.

Defendant was convicted of intentionally removing Christopher without the consent of the child's mother. (Ill. Rev. Stat. 1989, ch. 38, par. 10—5(b)(3).) He received a sentence of conditional discharge for a period of 12 months. He appeals his conviction. We reverse.

The relevant provisions of the child-abduction statute are:

"(3) 'Lawful custodian' means a person *** granted legal custody of a child ***. It is presumed that, when the parties have never been married to each other, the mother has legal custody of the child unless a valid court order states otherwise. ***

(b) A person commits child abduction when he or she:

* * *

(3) Intentionally *** removes the child without the consent of the mother *** of the child if the person is a putative father and *** the paternity of the child has not been legally established ***. However, notwithstanding the presumption created by paragraph (3) of subsection (a), a mother commits child abduction when she intentionally *** removes a child, whom she has abandoned or relinquished custody of, from an unadjudicated father who has provided sole ongoing care and custody of the child in her absence." Ill. Rev. Stat. 1989, ch. 38, pars. 10—5(a)(3), (b)(3).

Defendant maintains that this statute violates the due process and equal protection clauses of the United States and Illinois Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §§2, 18). Initially, we reject the State's contention that defendant waived his constitutional right to challenge the statute by not raising it in the circuit court. Our supreme court recently affirmed that a constitutional challenge to a statute can be raised at any time. *People v. Christy* (1990), 139 Ill. 2d 172, 176, 564 N.E.2d 770, 772.

■ We first address the defendant's due process claim. It is well settled that "a law that impinges upon a fundamental right explicitly or implicitly secured by the Constitution is presumptively unconstitutional." (*City of Mobile v. Bolden* (1980), 446 U.S. 55, 76, 64 L. Ed. 2d 47, 64, 100 S. Ct. 1490, 1504 (plurality opinion); *Harris v. McRae* (1980), 448 U.S. 297, 312, 65 L. Ed. 2d 784, 801, 100 S. Ct. 2671, 2685-86.) "[W]hether [defendant]'s constitutional rights have been violated must be determined by balancing his liberty interests against the relevant state interests." (*Youngberg v. Romeo* (1982), 457 U.S. 307, 321, 73 L. Ed. 2d 28, 40-41, 102 S. Ct. 2452, 2461; *Cruzan v. Director, Missouri Department of Health* (1990), 497 U.S. 261, 279, 111 L. Ed. 2d 224, 242, 110 S. Ct. 2841, 2851-52.) The substantive due process right violated, it is argued, is defendant's interest in the continued care and custody of his child. We find no violation, however. Defendant's interest in the " 'companionship, care, custody, and management' " of his illegitimate child, while " 'cognizable and substantial' " (*Quilloin v. Walcott* (1978), 434 U.S. 246, 247-48, 54 L. Ed. 2d 511, 515, 98 S. Ct. 549, 551, quoting *Stanley v. Illinois* (1972), 405 U.S. 645, 651-52, 31 L. Ed. 2d 551, 559, 92 S. Ct. 1208, 1212-13), is subject to the State's countervailing interest in protecting the custodial right of one parent from the abductive abuses of the other. (*People v. Algarin* (1990), 200 Ill. App. 3d 740, 748, 558 N.E.2d 457, 462.) Implicit in the statute is the legislature's recognition of the importance to children of a stable home environment and secure family relationships. (See, *e.g.*, Ill. Rev. Stat. 1989, ch. 40, par. 2102(a)(4).) Advancement of the State's interest in preventing child abduction by persons not having legal custody of the child is sufficiently important to withstand defendant's claimed deprivation of a liberty interest in the care and custody of his child.

As part of the due process analysis in this case, we observe that we have placed no reliance on the State's citation of *Michael H. v. Gerald D.* (1989), 491 U.S. 110, 105 L. Ed. 2d 91, 109 S. Ct. 2333. The facts and decision in that case are completely inopposite to the present appeal. In *Michael H.* a child's putative father filed an action in California to establish his paternity and right to visitation. At the time of the child's conception and birth, the child's mother had been married to and cohabiting with a man other than the child's putative father. The Supreme Court upheld the application of a California statute which provided that a child born to a married woman who was living with her husband at the time of conception and birth was presumed to be a child of the marriage.

The State misinterprets the plurality, concurring, and dissenting opinions filed in *Michael H.* in suggesting that the Court recognized that a biological father has neither the same right to custody as the biological mother, nor a fundamental right to raise his children. Rather, five members of the Court *confirmed* the right of natural parents. Justice Stevens' concurrence that sufficient process had been afforded to protect a putative father's interest also recognized that the father nonetheless had a "constitutionally protected interest in his relationship with [his] child." (491 U.S. at 133, 105 L. Ed. 2d at 112, 109 S. Ct. at 2347.) Four other justices also found such a constitutional right. (491 U.S. at 136, 105 L. Ed. 2d at 114, 109 S. Ct. at 2349 (Brennan, J., dissenting); 491 U.S. at 157, 105 L. Ed. 2d at 128, 109 S. Ct. at 2360 (White, J., dissenting).) Preservation of the recognized unitary family in *Michael H.* was thought to be entitled to greater constitutional protection than the claim asserted by the biological father. Unlike the situation in *Michael H.*, there are no competing interests in the instant case between the head of a unitary family and the biological father. *Michael H.*, therefore, represents no erosion of defendant's constitutional interest in his relationship with his child from that established in *Stanley* (405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208) and subsequent cases.

■ Next, defendant contends that the child-abduction statute violates our State's constitutional guarantee of equal protection because it is not gender-neutral. (Ill. Const. 1970, art. I, §18.) Our constitution's equal protection clause "render[s] any classification based on sex to be a 'suspect classification.' " (*In re Estate of Karas* (1975), 61 Ill. 2d 40, 53, 329 N.E.2d 234, 241.) Therefore, any classification based on sex must be "subject[ed] *** to 'strict judicial scrutiny' and requir[es] the existence of a compelling State interest to justify the classification." *Karas*, 61 Ill. 2d at 53, 329 N.E.2d at 241; see also *People v. Ellis* (1974), 57 Ill. 2d 127, 132-33, 311 N.E.2d 98, 101.

Defendant argues that the child-abduction statute provides for the prosecution of unwed fathers under circumstances in which an unwed mother would not be subject to prosecution. We disagree. The statute specifically provides that, notwithstanding the presumption created in subsection (a)(3) that a mother has legal custody, "a mother commits child abduction when she *** removes a child, whom she has abandoned or relinquished custody of, from an unadjudicated father who has provided sole ongoing care and custody." (Ill. Rev. Stat. 1989, ch. 38, par. 10—5(b)(3).) Any distinction in the statute between unwed mothers and fathers is sufficiently justified by the State's compelling interest in curbing abduction of illegitimate children from one unwed

parent by the other. It should be noted that a parent/child relationship is established between a child and the natural mother by proof of her having given birth to the child. (Ill. Rev. Stat. 1989, ch. 40, par. 2504(1).) An unwed father, however, can *only* establish a legal relationship with his child through the circuit court, pursuant to the Illinois Parentage Act of 1984 (Ill. Rev. Stat. 1989, ch. 40, par. 2501 *et seq.*). The State's failure to grant the same measure of recognition of legal parentage at birth to an unwed father as that accorded an unwed mother is based merely upon the biological reality that motherhood is obviously more apparent and therefore more easily established. Once an unwed father complies with the statutory procedure of legally establishing his biological relationship with the child, he cannot be convicted under the statute.

Although we have concluded that the statute is constitutional, we find that it has been unconstitutionally applied to this defendant based solely and exclusively upon the record in this case. Therefore, we must reverse the defendant's conviction.

■ The facts and circumstances surrounding the "taking" of Christopher by his father were not those envisioned by the legislature when it passed the child-abduction statute requiring the imposition of criminal penalties. (*Cf. People v. Rodriguez* (1988), 169 Ill. App. 3d 131, 523 N.E.2d 185; *People v. Williams* (1982), 105 Ill. App. 3d 372, 434 N.E.2d 412; *People v. Harrison* (1980), 82 Ill. App. 3d 530, 402 N.E.2d 822.) Nothing in the record indicates that this defendant had been a neglectful father who had abandoned his child. Prior to the child's removal by his mother from the shared residence, defendant had resided with Christopher from his birth and had provided uninterrupted financial and emotional support. Defendant exhibited all characteristics of responsibility toward Christopher that would be expected of a child's natural mother or a legally adjudicated father. We take particular note that, absent a marriage license, defendant and Teitle lived together and shared family responsibilities with Christopher as if they were lawfully married to each other. We conclude, based on this record, that the application of the child-abduction statute under these facts would deprive the defendant of equal protection of the law.

The judgment of the circuit court of Will County is reversed.

Reversed.

BARRY and SLATER, JJ., concur.