THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LARRY JAMES, Defendant-Appellant.

First District (5th Division)   No. 1—92—0146

Opinion filed April 30, 1993.

Rita A. Fry, Public Defender, of Chicago (Suzanne A. Isaacson and Karen E. Tietz, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

Defendant Larry James (James) was charged with two counts of aggravated assault (Ill. Rev. Stat. 1991, ch. 38, par. 12—2(a)(13)) and two counts of aggravated discharge of a firearm (Ill. Rev. Stat. 1991, ch. 38, par. 24—1.2(a)(2)). After a bench trial, James was found guilty of all charges and, according to the mittimus, sentenced to six years' imprisonment on the two convictions for aggravated discharge of a firearm. Credit was given for 367 days spent in custody prior to sentencing. James now brings this timely appeal. He requests reversal of his convictions for aggravated discharge of a firearm and a reduction of his sentence or remandment for re-sentencing.

Because the sufficiency of the evidence is not at issue on appeal, only a brief recounting of the facts of this case will be given.

Isaac Butler testified that he owned a building at 16 S. Lotus in Chicago. At about 1:30 p.m. on December 9, 1990, he, along with Dino Harvey and Mr. Smith, went to the building to make some repairs. Butler drove his car to a vacant lot across the street from the building and parked. When he arrived at the building Butler noticed a man standing on the steps of the building. This man was identified in court as defendant James.

Butler walked across the street, asked James to leave the property and then crossed back to his car and began taking tools out of the car. As Butler crossed the street, James began to holler at Butler and then pulled out a gun. From across the street, a distance of about 20 feet, James fired three shots in the direction of Butler and the two other men.

Dino Harvey, who had been with Butler that day, also testified and corroborated Butler's testimony completely. Both Butler and Harvey denied knowing James, although Harvey indicated that he may have seen James in the neighborhood on previous occasions. Furthermore, both Harvey and Butler denied that any argument had taken place with James prior to the incident.

In addition to the above testimony, the parties stipulated that Butler and Harvey reported the incident to the police and that Officer Conroy of the Chicago police department responded at the scene. James was not present when Officer Conroy arrived and was not apprehended at that time. On December 19, 1990, James was arrested in relation to a separate incident. Because James fit the physical description of the man who assaulted Butler and Harvey, he was placed in a lineup. Both Harvey and Butler identified James from this lineup as their assailant, and James was arrested on charges of aggravated assault and aggravated discharge of a firearm.

For his defense, James testified on his own behalf, presenting an entirely different scenario. James testified that he had been present at 16 S. Lotus on December 9, 1990, but that he did not have a gun and, thus, never fired a gun at anyone. He indicated that he knew Dino Harvey, drank with him on several occasions and had been dispatched by Harvey on a few occasions to purchase cocaine for him. He further indicated that on the day in question Dino Harvey approached him concerning $20 that James had previously borrowed from Harvey. Harvey demanded the money and, when James said he could not repay him, Harvey pulled out a knife and threatened him. James stated that he jumped back and, because he had no weapon, picked up some bottles and threw them at Harvey.

James also indicated that he did not know Butler and never saw him before in his life.

The trial judge rejected James' version of the events of December 9, 1990, and found the testimony of Butler and Harvey to be credible. James was found guilty of all charges.

Now, on appeal, James raises five issues, four of which involve the statute which delineates the offense of aggravated discharge of a firearm. Initially, James contends that aggravated discharge of a firearm is a lesser included offense of aggravated assault and that, consequently, he should have been sentenced on the two convictions for aggravated assault rather than on the two convictions for aggravated discharge of a firearm.

Next, James contends that the aggravated discharge of a firearm statute is unconstitutional for three reasons. First, assuming that aggravated discharge of a firearm is a lesser included offense of aggravated assault, James argues that the statute delineating the offense of aggravated discharge of a firearm violates due process because it penalizes a person found guilty of that offense more harshly than a person who is found guilty of aggravated assault. James also contends that the sentencing scheme would be unconstitutional even if aggravated discharge was not a lesser included offense of aggravated assault since aggravated discharge of a firearm is a "less serious offense" than aggravated assault. Secondly, James argues that the statute is unconstitutional because it may be construed to punish innocent as well as culpable acts. Lastly, James contends that the aggravated discharge of a firearm statute is unconstitutional as applied to the facts of his case. Specifically, James argues that the statute delineating the offense of aggravated discharge of a firearm was enacted by the legislature in an attempt to discourage random drive-by or sniper-type killings that have increasingly become a problem within our gang-infested inner city. James then contends that the statute should not be applied to him because the facts of this case do not fall within the parameters of this stated legislative intent.

In James' final issue he contends that he should be resentenced based upon his convictions for the Class 4 felony of aggravated assault, rather than for the Class 1 felony of aggravated discharge. However, in the event that this court fails to remand for resentencing, James contends that the record shows that he was sentenced to five years' imprisonment instead of six years' imprisonment. Therefore, he asks that the mittimus be corrected to reflect a five-year sentence.

OPINION

In his first issue James contends that aggravated discharge of a firearm is a lesser included offense of aggravated assault and that, for this reason, he should have been sentenced only on the greater offense of aggravated assault. We disagree.

By statute, a lesser included offense is "an offense which (a) [i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." (Ill. Rev. Stat. 1991, ch. 38, par. 2—9(a).) Illinois case law provides that, to be classified as a lesser included crime, every element of the lesser included offense must be included in the greater offense so that it is impossible to commit the greater offense without necessarily committing the lesser. (*People v. Luigs* (1981), 96 Ill. App. 3d 700, 421 N.E.2d 961.) Stated in another way, a lesser included offense is one composed of some, but not all, of the elements of the greater offense, and which does not have any element not included in the greater offense. (*People v. Jones* (1992), 149 Ill. 2d 288, 293, 595 N.E.2d 1071.) After considering these directives in conjunction with the statutes defining the two offenses, we must conclude that aggravated discharge of a firearm is not a lesser included offense of aggravated assault.

■ The statute which created the offense of aggravated discharge of a firearm was enacted rather recently. (See Ill. Rev. Stat. 1991, ch. 38, par. 24—1.2, added by Pub. Act 86—1393, §1, eff. September 10, 1990.) We have found no case law interpreting the statute or the elements that comprise the offense. The offense is defined in section 24—1.2 of the Criminal Code of 1961, which states:

"(a) A person commits aggravated discharge of a firearm when he knowingly:

(1) Discharges a firearm at or into a building he knows to be occupied and the firearm is discharged from a place or position outside that building; or

(2) Discharges a firearm in the direction of another person or in the direction of a vehicle he knows to be occupied.

(b) Aggravated discharge of a firearm is a Class 1 felony." Ill. Rev. Stat. 1991, ch. 38, par. 24—1.2.

It is readily apparent that to prove the offense of aggravated discharge of a firearm, it must be shown that (a) the offender knowingly and intentionally fired a firearm, aiming the weapon *in the direction* of a person or (b) knowingly and intentionally fired a firearm at or into a building or vehicle, knowing that the building or vehicle was occupied by individuals. Although it is an essential element of the of-

fense that the offender be aware of the presence of individuals, the person or persons being fired upon need not be aware of the offender's presence.

In comparison, the Class 4 offense of aggravated assault predicated upon the discharge of a firearm, which is defined in section 12—2(13) of the Criminal Code, is committed when a person, in committing an assault, discharges a firearm. (Ill. Rev. Stat. 1991, ch. 38, pars. 12—2(a)(13), (b).) Since an assault is committed when one engages in conduct, without lawful authority, which places another in reasonable apprehension of receiving a battery (Ill. Rev. Stat. 1991, ch. 38, par. 12—1) and a battery is committed when one intentionally or knowingly, without legal justification and by any means, causes bodily harm to an individual or makes physical contact of an insulting or provoking nature with an individual (Ill. Rev. Stat. 1991, ch. 38, par. 12—3), to prove the commission of aggravated assault predicated upon the discharge of a firearm it must be shown that (1) the offender intentionally or knowingly placed another in reasonable apprehension of receiving some sort of harmful physical contact, and (2) the offender discharged a firearm. Awareness of the offender's conduct is a major element of aggravated assault; however, it is not necessary to show that the offender discharged the firearm in the direction of a person.

It is clear that the offenses of aggravated assault and aggravated discharge of a firearm, although related, are distinguishable, each having elements which are not found in the other. Therefore, we conclude that aggravated discharge of a firearm is not a lesser included offense of aggravated assault.

■ James also argues, however, that even if aggravated discharge of a firearm is not a lesser included offense of aggravated assault according to their definitions, it may be deemed a lesser included offense in this specific case, based upon the facts of this case and the language contained within the charging instrument. James relies on *People v. Jones* (1992), 149 Ill. 2d 288, 595 N.E.2d 1071, and *People v. Bryant* (1986), 113 Ill. 2d 497, 499 N.E.2d 413, as support for this position. We, however, find James' reliance upon these cases to be misplaced.

In *Bryant*, a defendant who was charged with attempted burglary requested that the jury be instructed on the offense of criminal damage to property. The trial court denied the request on the basis that criminal damage to property was not a lesser included offense of attempted burglary. Our Illinois Supreme Court reversed, holding that, although criminal damage to property would not be considered a

lesser included offense of attempted burglary when one compared their statutory definitions and elements, it was a lesser included offense as charged in that particular case. Consequently, *Bryant* stands for the proposition that when a defendant is charged with one offense, but the language contained within the indictment may be interpreted as incorporating a lesser offense and the evidence presented at trial supports a finding of guilt on that lesser charge, defendant is entitled to an instruction on that lesser offense even though, technically, the lesser offense is not a lesser included offense of the offense charged.

The other case relied upon by James is *Jones*. In that case defendant was charged with armed robbery. The supreme court found, however, that the charging instrument sufficiently alleged both the conduct and the mental states required for the lesser offense of theft. Therefore, the court held that the trial court had acted properly when, acquitting defendant on the charge of armed robbery, it found him guilty of theft.

Although it is axiomatic that no person may be convicted of an offense with which he has not been charged, both *Jones* and *Bryant* allow some latitude to go outside the strict parameters of this rule. These cases hold that when a defendant is charged with committing an offense and the charging instrument sets forth the conduct that is alleged to constitute the charged offense, the defendant is fully and fairly placed on notice to answer that charge as well as any lesser offense implicitly set forth in the indictment and supported by the evidence presented against him.

Neither *Jones* nor *Bryant* authorizes the conversion of a legislatively determined greater offense into a lesser offense. The legislature, in its wisdom, created the offense of aggravated discharge of a firearm and, by affixing a greater penalty, made it a more serious crime than aggravated assault. It is not the number of elements that constitute the offense of aggravated discharge of a firearm that makes it a more serious offense than aggravated assault. Because aggravated discharge of a firearm has different elements than aggravated assault, it is a separate and distinct offense from aggravated assault, and the legislature is fully within its power to punish these offenses differently.

■ For the same reason, we must also reject James' contention that the aggravated discharge of a firearm statute results in an unconstitutionally disproportionate sentencing scheme. Although James correctly cites *People v. Wisslead* (1983), 94 Ill. 2d 190, 446 N.E.2d **512, for** the proposition that constitutional provisions are violated

when the penalty prescribed for one offense is not as great as or greater than the penalty prescribed for a less serious offense, we find no such constitutional violation in this case. As stated earlier, aggravated discharge of a firearm is neither a lesser included offense of aggravated assault, nor is aggravated discharge of a firearm a less serious crime than aggravated assault.

The focus of the offense of aggravated discharge of a firearm is the actual firing of a weapon. In this crime the offender, often without warning or reason, intentionally fires a weapon at or in the direction of individuals. Correspondingly, the focus of the offense of aggravated assault is threat or intimidation. The crime of aggravated assault is committed when the offender threatens to do harm to another. The firing of the weapon, which constitutes an aggravating factor, is incidental to the crime. Furthermore, as noted before, it is not necessary that the weapon be discharged in the direction of a person for the crime of aggravated assault to be committed.

When examined in this manner it seems evident that the two statutes serve different purposes and so the legislature considered different factors in enacting each penalty provision. (*People v. Wisslead* (1985), 108 Ill. 2d 389, 484 N.E.2d 1081.) There is a rational basis for finding that aggravated discharge of a firearm is a more serious offense than aggravated assault. One might easily conclude that it is more serious for the offender to intend to shoot at a victim, unexpectedly and without notice, than it is for the offender to intend to threaten or intimidate someone, even if the threat involves the firing of a weapon. Consequently, it does not violate constitutional mandates to affix a greater penalty to the offense of aggravated discharge of a firearm.

■ We must also reject James' contention that the statute was unconstitutionally applied in this case because his conduct did not fall within the parameters of the offense envisioned by the legislature when it enacted the statute prescribing the offense of aggravated discharge of a firearm. While it may have been the objective of the legislature to remedy the evil of random acts of violence indicative of gang-related drive-by or sniper-type shootings when the aggravated discharge statute was conceived and created, the statute may not be limited to those types of acts or fact patterns. In fact, if we were to limit the statute as defendant proposes, it would raise serious questions as to the constitutionality of the statute and would be improper. See *People v. Priola* (1990), 203 Ill. App. 3d 401, 561 N.E.2d 82 (statutes are presumed to be constitutional and must be interpreted so as to avoid a construction which would offend the constitution).

Although the primary purpose of statutory construction is to ascertain legislative intent (*People v. Dednam* (1973), 55 Ill. 2d 565, 304 N.E.2d 627), a statute is not interpreted by its sponsor's comments when introducing legislation, nor is it interpreted by the statements of senators or representatives who voted to pass the legislation formulating the statute. Rather, a statute is interpreted by its language, which if certain and unambiguous, must be given effect as written. See *People v. Robinson* (1982), 89 Ill. 2d 469, 433 N.E.2d 674 (statutory language is the best indication of drafters' intent and where intent can be ascertained from the language, it will be given effect without resorting to other aids for construction).

We realize that a constitutionally sound statute may be unconstitutionally applied. However, we do not find this to be the case here. The case of *People v. Morrison* (1991), 223 Ill. App. 3d 176, 584 N.E.2d 509, relied upon by James, is completely inapposite.

In *Morrison* the defendant was convicted of child abduction. However, the facts indicated that defendant, although never married to the child's mother, had lived with her for 4½ years, was the child's undisputed natural father and had lived with the child and supported it since its birth. The mother decided to separate from defendant and left the family residence, taking the child. Defendant then retrieved his son, removing him from the custody of the mother. No custody orders had been entered or violated. Under these circumstances, the court found that the defendant's actions in removing the child did not fall within the intent of the child abduction statute as enacted.

In this case, however, James' conduct clearly fell within the language and intent of the statute. Accepting the testimony of Butler and Harvey as true, as we must, James fired in their direction without reason or provocation. James was unknown to these men and they had no reason to believe that he was armed or would shoot at them. This is exactly the type of random, senseless misuse of a firearm that the legislature hoped to curb when it enacted the legislation creating the offense of aggravated discharge of a firearm.

In his last constitutional challenge, James contends that the statute is unconstitutional because it is possible to construe the statute in a manner which punishes innocent as well as culpable acts. Principally, James contends that the statute may be construed in either of two ways: (1) that only the discharge of the firearm must be knowing, or (2) that both the discharge of the firearm and the discharge in the direction of a person must be knowing. James then contends that the first interpretation would be constitutionally defective since the firing of a firearm is not *per se* unlawful.

■ As stated earlier, when a statute is susceptible of more than one construction, the construction which renders the statute effective must be employed. Therefore, the first proposed construction must be rejected and we must assume that the second construction was intended, *i.e.*, that the legislature made it unlawful for someone to intentionally fire a weapon, knowing that the weapon was being fired in the direction of someone.

James also contends that even if we used the second interpretation it, too, is defective because it does not take into account any exceptions, such as the firing of a weapon in self-defense. This argument is also completely without merit since the same can be said of almost every criminal statute. Seldom does the prescribed offense specify the legal justifications which would render the statute inoperable.

The final issue concerns James' sentence. James contends that he was sentenced to five years' imprisonment instead of the six years indicated on the mittimus. James provides this court with a transcript of a sentencing hearing in which he was sentenced to five years' imprisonment. However, the State argues that this is the wrong transcript. The State indicates that James was charged with aggravated battery in relation to a separate incident and that, immediately following the sentencing hearing in the present (aggravated discharge of a firearm) case, James entered a guilty plea on the aggravated battery charge and was then sentenced. The State contends that the transcript for this subsequent sentencing hearing is what has been supplied to this court by James.

■ Our review of the record before this court shows that the transcript does, indeed, contain James' guilty plea and sentencing on the charge of battery. Whether it also contains the sentencing for James' aggravated discharge conviction, as James contends, is not at all clear. However, it seems highly unlikely that this is the sentencing hearing at issue here since the court made only a single reference to the aggravated discharge conviction, stating:

> "On the charge of aggravated battery, I would impose that sentence of five years [in the] Illinois Department of Corrections; that sentence to run concurrently, that will be at the the [*sic*] same time under Number 588 [the aggravated discharge of a firearm case number]."

Because the record does not clearly reflect the circumstances as suggested by defendant, we find the record to be insufficient to support the claim of error. Furthermore, because defendant has failed to demonstrate the claimed discrepancy in the judge's oral pronouncement of

sentence, we must rely on the written order of sentence and commitment, which reflects a six-year sentence was imposed. (*People v. Williams* (1983), 97 Ill. 2d 252, 454 N.E.2d 248.) Therefore, we affirm James' six-year sentence.

As an aside we note that even if we had accepted James' argument and found that he was, in fact, sentenced to five years instead of six, the relief this court would be granting would be illusory since James is scheduled for release from prison in August of this year.

For all the reasons stated above, we affirm James' convictions and sentence.

Affirmed.

GORDON, P.J., and COUSINS, J., concur.