THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ERNEST WILLIAMS, Defendant-Appellant.

(No. 60756;

First District (2nd Division)—September 16, 1975.

*Rehearing denied October 9, 1975.*

Paul Bradley and Steven Clark, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Raymond J. Prosser, and Linda Ann Miller, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Following a bench trial, defendant, Ernest Williams, was found guilty of two counts of aggravated incest and sentenced to serve an 8- to 15-year term in the penitentiary. On appeal, defendant contends that the aggravated incest statute (Ill. Rev. Stat. 1971, ch. 38, par. 11—10) is unconstitutional and, alternatively, that his sentence should be reduced in conformity with the Unified Code of Corrections. The record reveals that the conviction of guilt rested mainly upon the testimony of defendant's two daughters, Martha and Ellen Williams.

Martha Williams testified that she was 25 years old and first had sexual intercourse with her father, Ernest Williams, when she was 9 or 10 years old. Immediately prior to this first incident, defendant threatened to kill her if she told anyone of his actions. As she grew older, the frequency of intercourse with her father increased. She stated that she had given birth to five children, and that defendant was the father of four of her children, including one that had died previously. She testified that defendant had sexual intercourse with her on December 1, 1969, and that at the time she was living with her father and mother as well as with other members of her family. Late at night on the date in question she was asleep in her bedroom when defendant told her to get up and go downstairs. She went downstairs to the living room and was told by her father to remove her clothes and get on the floor. Defendant then had sexual intercourse with her.

She was told by defendant that there was nothing wrong in having sexual intercourse with him, although, as she grew older, she realized that such conduct was improper. She did not tell anyone of her relations with her father because of his threats to do bodily harm to both her and other members of the family and because of the ignominy that would be brought on the entire family. She and her sister Ellen finally called the police after their younger brothers had told them that their younger sisters, Debbie and Nancy, were pregnant. She did not want their lives to be ruined as hers had been.

Ellen Williams, who was 23 years old, testified that defendant was her father and that she first had sexual intercourse with him when she was 8 years old. She gave birth to a son on October 4, 1964, when she was 14 years old. Prior to that time she had not had sexual intercourse with anyone other than her father. She gave birth to another son on January 22, 1968, and a daughter on February 6, 1969. Her father was the father of all three of her children.

Ellen had sexual intercourse with her father on July 3, 1969. She had retired to bed at 10:30 p.m. on that night. At approximately 11:30 p.m., her father came into the room with a sledge hammer and a heavy wrench and instructed her to take off her clothes. Defendant thereupon had sexual intercourse with her and told her not to tell anyone or else he would kill her.

Defendant was convicted of aggravated incest under section 11—10 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 11—10) for having sexual intercourse with his daughters. A female, on the other hand, who engaged in sexual intercourse with her son, would be guilty of incest under section 11—11 of the Criminal Code. (Ill. Rev. Stat. 1971, ch. 38, par. 11—11.) Aggravated incest is punishable with a maximum term of 20 years' imprisonment, (Ill. Rev. Stat. 1971, ch. 38, par. 11—10(c)) while incest carries a possible maximum term of 10 years. Ill. Rev. Stat. 1971, ch. 38, par. 11—11(b).

Defendant contends that the aggravated incest statute discriminates against male parents solely on the basis of sex in violation of the fourteenth amendment of the United States Constitution and of the Bill of Rights of the 1970 Illinois Constitution, which provides:

"The equal protection of the laws shall not be denied or abridged on account of sex by the State or its units of local government and school districts." (Ill. Const. (1970), art. 1, § 18.)

It is argued that the different treatment accorded males under the aggravated incest statute and females under the incest statute is a classification based solely on sex and is therefore "suspect" and subject to "strict judicial scrutiny." (*Frontiero v. Richardson,* 411 U.S. 677, 36 L.Ed.2d 583, 93 S.Ct. 1764; *Phelps v. Bing,* 58 Ill.2d 32, 316 N.E.2d 775; *People v. Ellis,* 57 Ill.2d 127, 311 N.E.2d 98.) Defendant maintains that the State has failed to demonstrate a compelling State interest which justifies the classification or, alternatively, that the classification is not rationally related to a legitimate State interest. (*Reed v. Reed,* 404 U.S. 71, 30 L.Ed. 2d 225, 92 S.Ct. 251.) In support of its position, we are referred to the Fourth District decision in *People v. Boyer,* 24 Ill.App.3d 671, 321 N.E.2d 312 (Mr. Justice Smith dissenting), wherein the court held that a father convicted of aggravated incest was denied equal protection of the law.[1] The Fifth District Appellate Court, however, has rejected the reasoning of the *Boyer* decision in upholding the constitutionality of the aggravated incest statute. *People v. York,* 29 Ill.App.3d 113, 329 N.E.2d 845.

---

[1] The court affirmed the judgment of conviction for aggravated incest but found that the penalty provision was unconstitutional. On the authority of *Phelps v. Bing* it applied the lesser sentence of section 11—11 to a judgment of conviction under section 11—10.

From an examination of the primary authorities submitted, we are not persuaded to the conclusion that the aggravated incest statute is violative of equal protection. In *Frontiero,* the Supreme Court held that equal protection was denied by according differential treatment to male and female members of the uniformed services for the sole purpose of achieving administrative convenience. In *Ellis* a section of the Juvenile Court Act, which permitted 17-year-old boys to be tried as adults while affording the procedural protection of the Act to 17-year-old girls, was held unconstitutional. Similarly, in *Phelps,* the court found a denial of equal protection in certain sections of the Marriage Act treating males and females of the same age differently for the purpose of determining their rights to a marriage license. In *Reed,* under the permissive standard of review, the Court held unconstitutional a provision of the Idaho Probate Code giving "mandatory" preferential treatment to males over females in applying for appointment as an administrator of a decedent's estate. In each of the above cases, the gender-based distinction arose in relation to identical conduct and was wholly irrational to the object of the legislation. (See also *Stanton v. Stanton,* —— U.S. ——, 43 L.Ed.2d 688, 95 S.Ct. 1373; *Weinberger v. Wiesenfeld,* 420 U.S. 636, 43 L.Ed.2d 514, 95 S.Ct. 1225.) Under the statute here challenged, we cannot say that the classification is based upon sex alone or is in relation to identical conduct.

A reading of the statutory scheme makes manifest that the classification does not rest upon sex alone. While only a male may be convicted of aggravated incest, the same male may also be convicted of ordinary incest under section 11—11 for sexual relations with either his mother or sister. Therefore, more severe penalties are levied against fathers and stepfathers, not because they are men, but because of their positions in the family. *People v. York.*

Although different treatment is accorded males, the justification therefor lies in the fact that there exists a difference in the proscribed conduct. As stated in the dissenting opinion of Mr. Justice Smith in *People v. Boyer,* 24 Ill.App.3d 671, 676:

> "To deny that fundamental biological differences between men and women preclude the identical physical conduct by each is to deny the obvious. The term 'sexual intercourse' is defined in section 11—1 of the Criminal Code as 'sexual intercourse occurs when there is any penetration of the female sex organ by the male sex organ.' It is thus obvious that no female is physically or biologically able to perform sexual intercourse with another female no matter whether the relationship is one of consanguinity or affinity. To equate the father-daughter relationship with a mother-son sexual relationship as similar acts between parents and a designated child ignores the

differences between those acts, physically, psychologically, naturally, historically, and statistically. No governmental agency either through constitution or statute can make acts identical which are fundamentally nonidentical. No agency of government by statute or constitution can declare a stated relationship equal when in fact they are not."

To the extent that the statutory scheme discriminates on the basis of sex, we hold that the classification is both rationally related to a legitimate governmental objective and is supported by compelling considerations. Unlike the principle cases cited by defendant, it is worthy of reiteration that here we do not deal with males and females who are similarly situated, but rather, with those distinctions attendant to the sexual conduct of men and women.

■■ The statutory proscription against incestuous relationships, in part, has for its object the protection of children from the sexual abuse of parental authority. That the social harm is greater in father-daughter sexual intercourse is amply borne out both theoretically and empirically. Unlike the mother-son incestuous relationship, the danger of unwanted pregnancies becomes manifold when the male engages in intercourse with several daughters. The reality of this proposition is tragically demonstrated by the case at bar. Moreover, we do not think it subject to serious debate that the physical and psychological dangers of intercourse are greater when inflicted upon a female child. The Committee Comments to section 11—10 state that "the vast majority of incest cases that are prosecuted involve a father's abuse of a daughter." In this context, as pointed out in the *York* decision, not a single case of aggravated incest or incest has been found which involved other than a father-daughter or stepfather-stepdaughter relationship with the exception of two which involved uncles and nieces, no longer the offense of incest. These considerations inescapably give rise to the conclusion that the social harm of father-daughter intercourse is greater than in other proscribed incestuous relationships. This conclusion, under both the permissive and active standards of review (see *People v. Medrano*, 24 Ill.App.3d 429, 321 N.E.2d 97; *Occhino v. Illinois Liquor Control Commission*, 28 Ill.App.3d 967, 329 N.E.2d 353), warrants the legislative determination that a greater penalty is commensurate with the greater harm and is necessary to deter that class "who most often, if not exclusively, commit the offense." (*People v. York.*) We hold, therefore, that section 11—10 of the Criminal Code is not violative of equal protection under either the United States or Illinois Constitutions.

■■ The statute in effect at the time defendant committed the offenses provided for a sentence of 2 to 20 years in the penitentiary. (Ill. Rev.

552

Stat. 1971, ch. 38, par. 11—10(.c).) Following the enactment of the Unified Code of Corrections, aggravated incest became a Class 2 felony, thus providing for a 1- to 20-year term with the minimum term not to exceed one-third of the maximum. (Ill. Rev. Stat. 1973, ch. 38, pars. 11—10(c), 1005—8—1(b)(3) and (c)(3).) In accordance therewith, we reduce defendant's minimum term to 5 years.

Judgment affirmed as modified.

DOWNING, P. J., and LEIGHTON, J., concur.