THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID VICH, Defendant-Appellant.

Second District    Nos. 2—97—0793, 2—97—0902 cons.

Opinion filed December 28, 1998.—Rehearing denied February 9, 1999.

215

Michael A. Ficaro and John P. Ratnaswamy, both of Hopkins & Sutter, of Chicago, for appellant.

Paul A. Logli, State's Attorney, of Rockford (Martin P. Moltz and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

The defendant, David Vich, appeals his conviction of aggravated discharge of a firearm (720 ILCS 5/24—1.2(a)(2) (West 1994)) after a jury trial and the probation order conditioned in part on the

defendant's reporting for 180 days of incarceration and paying restitution to the victim in the amount of $41,799. This appeal has been consolidated with an appeal from an order denying the defendant's motion for substitution of judge. We affirm.

The following facts are taken from the record. On January 25, 1995, the defendant was charged with one count of aggravated discharge of a firearm. 720 ILCS 5/24—1.2(a)(2) (West 1994). At the jury trial, the alleged victim, Troy Specht, testified that he had briefly met with the defendant a couple of times before the incident. Specht stated that his 14-year-old sister, Tracie, had dated one of the defendant's friends and the defendant had called Tracie and asked to be set up with one of her girlfriends. During a phone conversation, Specht told the defendant to stop calling Tracie.

According to Specht, on the night of the incident, January 2, 1995, his friends, Greg Tassoni and a man identified only as Harold, ate dinner at Specht's home. While at Specht's house, the men drank a couple of beers. Later, Specht drove Tassoni to a bar called "Nectar's," where they met Harold and drank more beer. Then they all went to another bar, Latham's Tap, where they shot pool and drank more beer.

Specht stated that both he and Tassoni were "buzzed" when, about 1 a.m., January 3, 1995, Specht began to drive home with Tassoni. While passing the defendant's house, Specht decided to stop and confront the defendant about the phone calls to Tracie. Specht had had about five or six beers at this time but was not drunk. The defendant's house was dark when Specht and Tassoni arrived. Specht parked away from the house so that the defendant would not see him and walked to the deck at the back of the house. Specht and Tassoni pounded on the defendant's back door but did not break any part of the door. Specht called out the defendant's name. Specht was very upset but did not threaten the defendant. When there was no response, Specht and Tassoni began to walk back to Specht's car when Specht was struck in the lower back by a bullet; the bullet exited through his abdomen. Specht stated that he heard only one shot. Tassoni drove Specht to the hospital where Specht underwent emergency surgery.

Specht also testified that he owned guns and could have taken guns out and shown them to Tassoni on the night of the incident. Specht denied that Tassoni said "Let's go out and shoot something." Further, Specht stated that he did not have a gun, knife, or any other weapon with him when he went to the defendant's home on the night of the incident. Tassoni did not testify.

Rockford police sergeant John Genens testified that he examined the jacket worn by Specht on the night in question. Based on the

fibers and holes in the jacket, Genens opined that the bullet entered Specht's back and exited from his front torso. Genens' opinion was corroborated by Larry Blum, a forensic pathologist, who added that the defendant shot Specht while Specht walked away from the defendant's house.

Rockford police sergeant Loy Rice testified that he found a single shell casing and a single bullet hole in the blinds in the defendant's bedroom. Rockford police detective Eugene Koekler testified that he recovered the shell casing found in the defendant's bedroom. Rockford police detective John Bowman testified that a string would pass through the hole in the defendant's window and screen straight through to the back of the defendant's house.

The defendant's neighbor, Scott Chemello, testified that the day after the incident, January 4, 1995, Chemello told the defendant that he was sorry about the attempted break-in the previous night. The defendant replied, "I bet those little f-----s won't do it again. I shot one of them." According to Chemello, the defendant also told him that "if the other one was in view [the defendant] would have shot him too" and that "[the defendant] knew he got one kid in the foot." When Chemello expressed concern about stray shots, the defendant assured Chemello by stating that he was "a good shot."

Chemello also stated that he told the police about this conversation and that a few weeks later the defendant criticized Chemello and Chemello's girlfriend for their statements. Chemello acknowledged that the police report did not contain many of the statements Chemello made during his testimony. The State rested, and the trial court denied the defendant's motion for a directed verdict.

The defendant called Dr. Martin Fackler, an expert in wound ballistics, who stated that, based on the trajectory of the bullet that traveled through the defendant's bedroom window, the bullet could not possibly have hit Specht if Specht was where he claimed to have been when he was shot. Based on photographs, Fackler stated that the bullet fired from the defendant's window would have gone somewhere up in the air and would not have struck Specht. Fackler also stated that the shooter was on his knees in the defendant's bedroom when the shot was fired. Fackler stated that the medical records indicated that Specht was shot in the front, but he could not say with "any high degree of medical certainty" whether Specht was shot in the back or the front because of lack of information.

Next, defendant called Angela Specht, the alleged victim's wife. A report prepared by Rockford police officer Heidi Hackbarth indicated that Angela told Hackbarth that on the night in question her husband and Tassoni had a few beers, examined some guns her husband was

selling, and then left to go to a bar. Angela also allegedly told Hackbarth that, before the men left, Tassoni started acting "goofy" and said "let's use [the gun] tonight" and "I want to shoot something." However, during her testimony at the trial, Angela stated that she did not recall making these statements to Hackbarth and did not remember seeing any guns at her home the night of the incident. Because Officer Hackbarth did not appear as a witness, the report was not admitted into evidence and defense counsel was unable to impeach Angela with her allegedly prior inconsistent statements.

Next, Rockford police detective Patrick Girardi testified that he examined the door of the defendant's home the day after the incident. The outer pane of the window of the door was broken. Rockford police officer John Gradick also visited the defendant's home the day after the incident, and the window pane of the door appeared to have been cracked by a blow.

The State then called Russell L. McLain III, of the Illinois State Police Rockford forensic science lab, as a rebuttal witness. McLain stated that the firearm taken from the defendant's home had three safety features. When asked about the likelihood of the firearm accidentally firing, McLain replied that "you would have to exert some extreme force upon the firing pin itself in order to override the firing pin block." But he acknowledged that safety devices do not always work effectively. The pull on the trigger measured 7½ foot-pounds.

After deliberation, the jury found the defendant guilty of aggravated discharge of a firearm. On June 12, 1997, after a hearing, the trial court denied the defendant's posttrial motions. Subsequently, the trial court entered a probation order conditioned in part on the defendant's reporting for 180 days of incarceration and paying restitution to Specht in the amount of $41,799. The defendant filed this timely appeal.

The defendant argues that the jury was improperly instructed. He asserts that the jury was not instructed as to an essential element of the offense of aggravated discharge of a firearm, namely, that of *knowingly* discharging the firearm and *knowingly* aiming it at another person. The State argues that the instructions were proper.

██ █ Initially, we note that the defendant acknowledges that this issue has been waived but urges us to review the issue under the plain error rule. Because errors in key jury instructions cast doubt on whether a defendant received a fair trial, we will address the merits of the defendant's argument. *People v. Boose*, 256 Ill. App. 3d 598, 602 (1994).

The failure to instruct a jury on an essential element of an offense may be reversible error. *People v. Kamide*, 254 Ill. App. 3d 67, 73

(1993). If, however, evidence of an element of an offense is overwhelming, its omission from the jury instructions will not warrant reversal. *Kamide*, 254 Ill. App. 3d at 74. It is well settled that, to prove a defendant guilty of aggravated discharge of a firearm, the State must establish that the defendant knowingly discharged a firearm and did so knowing the discharge was in the direction of another person. *People v. James*, 246 Ill. App. 3d 939, 948-49 (1993).

■ In the case at bar, the trial court instructed the jury using Illinois Pattern Jury Instructions, Criminal, Nos. 18.11 and 18.12 (3d ed. Supp. 1996) (hereinafter IPI Criminal 3d No. 18.11 and/or No. 18.12 (Supp. 1996)). These instructions provide:

"A person commits the offense of aggravated discharge of a firearm when he knowingly discharges a firearm in the direction of another person." IPI Criminal 3d No. 18.11 (Supp. 1996).

"To sustain the charge of aggravated discharge of a firearm, the State must prove the following propositions:

*First Proposition*: That the defendant knowingly discharged a firearm;

and

[2] *Second Proposition*: That the defendant discharged the firearm in the direction of another person." IPI Criminal 3d No. 18.12 (Supp. 1996).

After reviewing the instructions given in the case at bar, it is clear that one of the instructions, IPI Criminal 3d No. 18.12 (Supp. 1996), is ambiguous in that it does not clearly state that the *mens rea* applies to both elements of the offense. The word "knowingly" is absent from the second proposition. Indeed, the older version, Illinois Pattern Jury Instructions, Criminal, No. 18.14 (3d ed. 1992) (hereinafter IPI Criminal 3d No. 18.14), more clearly states the required *mens rea* regarding aggravated discharge of a firearm in the direction of another person. The older version provides in part:

"To sustain the charge of aggravated discharge of a firearm, the State must prove the following propositions:

*First Proposition*: That the defendant knowingly discharged a firearm; and

*Second Proposition*: That he did so *knowing* the discharge was in the direction of another person." (Emphasis added.) IPI Criminal 3d No. 18.14.

Thus, we believe that IPI Criminal 3d No. 18.12 (Supp. 1996) should be revised to express that the *mens rea* modifies both elements of the offense of aggravated discharge of a firearm in the direction of another person.

■ Although the jury in this case was improperly instructed with IPI Criminal 3d No. 18.12 (Supp. 1996), the jury was provided with at

least one instruction which correctly stated the law. The word "knowingly" in IPI Criminal 3d No. 18.11 (Supp. 1996) clearly modifies both elements of the offense. A review of the record discloses that when IPI Criminal No. 18.12 (Supp. 1996) is read in context with IPI Criminal 3d No. 18.11 (Supp. 1996), the jury was properly instructed; thus, the defendant suffered no prejudice. See *Boose*, 256 Ill. App. 3d at 603.

■ Further, the evidence was overwhelming that the defendant knew he was discharging his weapon in the direction of Specht. It is uncontroverted that the defendant admitted to his neighbor, Chemello, that he shot someone who was trying to break into his home. The defendant reassured Chemello regarding the dangers of firing a weapon by stating that he was a good shot. Because there was overwhelming evidence that the defendant discharged his firearm, *knowing* the discharge was in the direction of another person, the improper jury instruction at issue (IPI Criminal 3d No. 18.12 (Supp. 1996)) does not warrant reversal. See *Kamide*, 254 Ill. App. 3d at 74.

The judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

GEIGER, P.J., and HUTCHINSON, J., concur.