# Illinois Official Reports

## Appellate Court

***People v. Soskin*, 2021 IL App (2d) 191017**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROLLIN J. SOSKIN, Defendant-Appellant. |
| District & No. | Second District<br>No. 2-19-1017 |
| Filed | October 25, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 18-CM-2123; the Hon. Ari P. Fisz, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Ilia Usharovich and Sheldon Sorosky, both of Wheeling, for appellant.<br><br>Michael G. Nerheim, State's Attorney, of Waukegan (Patrick Delfino, Edward R. Psenicka, and Lynn M. Harrington, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion.<br>Justices Schostok and Birkett concurred in the judgment and opinion. |

**OPINION**

¶ 1     An information charged defendant, Rollin J. Soskin, with violating an order of protection (720 ILCS 5/12-3.4(a)(1) (West 2018)). Defendant moved to dismiss the information, contending that the order of protection had been vacated by agreement. The trial court denied defendant's motion. After a bench trial, the trial court found defendant guilty of violating the order of protection. Defendant argues that (1) that the trial court erred by denying his motion to dismiss the information because the order of protection was rendered void *ab initio*, (2) the trial court erred by failing to dismiss the information because the information failed to recite an offense, (3) he was not proved guilty beyond a reasonable doubt of violating the order of protection, and (4) the order of protection was unconstitutional because it was overbroad and vague in violation of his first amendment rights. For the reasons that follow, we affirm the judgment of the trial court.

¶ 2                                    I. BACKGROUND

¶ 3     On June 8, 2018, during the dissolution of marriage case between defendant and Diana Soskin, the trial court (civil court), Judge Raymond D. Collins, presiding, issued an order of protection. The order indicated that defendant was to stay at least 500 feet away from Diana or her residence and that defendant shall have no "physical, verbal, written or 3rd party or social media contact" with Diana. The order stated that it was effective until January 22, 2019.

¶ 4     On August 6, 2018, the State filed a two-count information charging defendant with violating the order of protection in violation of section 12-3.4(a)(1) of the Criminal Code of 2012 (*id.*). Count I alleged that on July 3, 2018, having been served with an order of protection, case No. 2018-OP-1021, issued on June 8, 2018, defendant knowingly committed an act prohibited by the order when he made prohibited contact, namely, a text message sent through a third party, David Loeb, to Diana. Count II alleged that on July 30, 2018,[1] defendant knowingly violated the order of protection when he made prohibited contact, namely, a text message sent through a third party, Steve Turner, to Diana.

¶ 5     On July 12, 2019, defendant filed a motion to dismiss the information, pursuant to section 114-1(a)(8) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/114-1(a)(8) (West 2018)), "for a violation of due process of law, because the statutory allegation, under which he is being prosecuted, as written in the order of protection[,] 'no 3rd party contract': (1) fails to recite an offense; (2) is constitutionally vague; (3) is unconstitutionally overbroad; and (4) is unconstitutional because it can only be selectively enforced." The trial court (criminal court) denied defendant's motion.

¶ 6     On August 8, 2019, defendant and Diana signed a document entitled "Letter Agreement," (letter of agreement) which stated in part:

> "1. Pursuant to Section 501(d) of the Illinois Marriage and Dissolution of Marriage Act, orders entered in the case of IRMO Soskin 17 D 1796 were entered as temporary orders, were entered without prejudice to a party's right to a subsequent hearing and

---

[1]The actual date of the violation was June 30, 2018; however, the date is not an element of the offense and defendant does not raise a claim regarding the inaccuracy of the date in the information.

terminate upon the entry of a Final Judgment for Dissolution of Marriage including, but not limited to the following Court Orders:

A. On November 20, 2017;

B. On January 18, 2018;

C. On June 8, 2018.

* * *

4. In accordance with the above, and simultaneous with the entry of Judgment for Dissolution of Marriage, the parties being in agreement, the Order of Protection shall be dismissed and/or vacated *ab initio* and the aforementioned Order shall no longer be in effect due to the divorce and good cause shown due to no full evidentiary hearing."

The words "*ab initio*" were added in handwriting after the word "vacated."

¶ 7 On the same day, the civil court, Judge Stephen M. DeRue presiding, heard testimony at the prove-up for the dissolution of marriage. Diana testified that she agreed to have the order of protection vacated "today." During defendant's testimony, his counsel asked: "[B]y virtue of [the letter of] agreement, your wife has agreed that those orders [of protection] will be vacated which will require a separate order by this Court to vacate those orders. And in addition to that, we have this letter of agreement which explains the reasons for vacating that order, correct?" Defendant replied, "Yes." Counsel then told defendant that the letter of agreement would be attached to the order. The trial court asked, "[a]ttaching the letter to the order?" Counsel explained, "[w]ell, we'll bring that to the criminal court's attention, our letter of agreement." The court stated, "[t]hat's something separate from myself." Counsel replied, "Yes." After hearing testimony, the civil court stated, "The judgment will enter as to the dissolution. The written marital settlement agreement will be incorporated by reference only."

¶ 8 On August 8, 2019, the civil court also entered a judgment of dissolution as to defendant and Diana. The judgment incorporated the parties' marital settlement agreement, which was signed by Judge DeRue. The marital settlement agreement provided that "[t]he parties have entered into a Letter Agreement that is incorporated herein by Reference." The letter of agreement was not attached to the judgment of dissolution or the marital settlement agreement. Judge DeRue also signed a form order titled, "Order with Statutory Findings Regarding Petition for Order of Protection." On the form order, a box was checked next to the statement, "[t]hat pursuant to Petitioner's [(Diana)] request, the cause is non-suited."

¶ 9 On August 27, 2019, the civil court, Judge Collins presiding, entered an order providing:

"This matter coming to be heard on [defendant's] Emergency Motion for entry of order clarifying order, Judge DeRue hearing arguments for [defendant] and sending the matter to Judge Collins; Judge Collins being apprised of the premises;

IT IS HEREBY ORDERED: by agreement of the parties at the prove-up on August 8, 2019, the Order of Protection was vacated to the date of its inception and that was agreed upon by the parties at the August 8, 2019 prove-up."

¶ 10 On August 28, 2019, defendant filed in the criminal case a motion to dismiss the State's information, arguing that he could not be prosecuted for violating an order of protection that was void *ab initio*. That same day, the criminal court, Judge Ari P. Fisz presiding, held a hearing on defendant's motion. At the conclusion of the hearing, the court denied defendant's motion to dismiss the information.

¶ 11    The criminal court rejected defendant's argument that the order of protection was void *ab initio* because he was entitled to, but was denied, an evidentiary hearing before the issuance of the order of protection. The court stated that defendant was not entitled to an evidentiary hearing, citing section 219 of the Illinois Domestic Violence Act of 1986 (Act) (750 ILCS 60/219 (West 2018)), and that defendant was actually given an evidentiary hearing, regardless. The court also found that defendant agreed to the entry of the order of protection on June 8, 2018.

¶ 12    The criminal court then addressed defendant's argument that the civil court's dissolution of marriage judgment retroactively vacated the order of protection because the marital settlement agreement, which was incorporated into the judgment, incorporated by reference the parties' letter of agreement. The court noted that the letter of agreement was not attached to the marital settlement agreement or to the judgment of dissolution. The court also noted that the transcript of the hearing before Judge DeRue clearly indicated that he did not intend the letter of agreement to be part of his dissolution judgment.

¶ 13    The criminal court also rejected defendant's argument that Judge Collins's clarifying order retroactively vacated the order of protection. The court noted that Judge Collins signed an order that dealt with the parties' intentions at a prove-up that occurred in front of another judge (Judge DeRue). The court stated that it did not understand Judge Collins's order and that the order did not make any sense and was vague. The court also stated that, even if Judges DeRue and Collins did order that the order of protection was vacated retroactively, they did not have the ability to do so under the law. The court held that "a court cannot go back and invalidate an earlier order of protection *nunc pro tunc* if that order of protection was valid in the first place." Ultimately, the court denied defendant's motion to dismiss the State's information.

¶ 14    The criminal court then held a bench trial on the State's charges of violating an order of protection. At trial, Diana identified People's exhibit No. 1, the order of protection entered on June 8, 2018. Diana testified that on the date the order was entered she was in court with her attorney, defendant, and his attorney, David Frumm. After the order of protection was granted, Diana saw the sheriff hand defendant the order of protection before defendant left the courtroom.

¶ 15    Diana also testified that Steve Turner was a man she had been dating since March 2018. On June 30, 2018, Diana was on the phone with her son when Turner texted her. Turner then called Diana, but she was still on the phone with her son. When she got off the phone, Diana spoke with Turner, who said to make sure that she talked to her son because Turner thought it was an emergency. Turner then forwarded Diana a text that he had received from someone. When Diana was asked who sent the text to Turner, defense counsel objected based on hearsay and the trial court sustained the objection. Diana did not call her son after receiving Turner's messages because she was already on the phone with her son when she received them. Diana and her son were not speaking about any urgent topic.

¶ 16    Turner testified as follows. He knew defendant and had met him in person twice. Turner knew defendant's voice because defendant had previously spoken to him. Turner knew defendant's cell phone number because he had received texts in the past that he believed were from defendant. Turner saved that cell phone number in his phone under defendant's name. Defendant also left Turner a voicemail in the past and identified himself in the message.

¶ 17    Turner further testified that on June 30, 2018, he received a text message from the same phone number that Turner saved earlier under defendant's name. The text message read,

"[p]lease tell Diana to call our son, Ryan, ASAP. Thank you." Turner responded, "[d]o me a favor, don't text me." Defendant responded, "I wouldn't unless I thought it was important. I do still want to meet you to see if we can make sure things go smoothly for my daughter's wedding in November. I think that is in both of our interests. Just name the place." Turner responded, "Why would it not?" Defendant replied, "I'll explain that only in person," adding "and I hope you aren't parking too close to my [Corvette]."

¶ 18 Turner testified that, when he received defendant's text message asking him to tell Diana to call their son, Turner called her. He believed that he also sent her a text message. He "did communicate [that she] need[ed] to call." To his knowledge, Diana "eventually receive[d] a message from [him] that [defendant] wanted her to call their son." During cross-examination, Turner said that, although he knew that the texts came from defendant's phone, he could not say that he knew for certain that defendant actually texted those messages because he did not see defendant physically text them.

¶ 19 Jan Fischer testified as follows. In June 2018, Fischer was a Lake County court security officer. On June 8, 2018, it was her job to serve orders of protection that were issued. Fischer explained that, after an order of protection was printed out, she filled out a service sheet with the date, time, and location, and handed the order of protection to the person it was issued against. Fischer also testified that on June 8, 2018, at around 11:15 a.m., she served defendant with an order of protection.

¶ 20 During cross-examination, Fischer testified that, although she had probably served over 100 people with orders of protection since June 8, 2018, she remembered serving defendant with his order of protection because he had "typically been a very difficult person to control inside the courtroom" on at least a dozen occasions.

¶ 21 Defense counsel, Frumm, testified on defendant's behalf as follows. Before the court prepared the order of protection, defendant said that he was leaving the courtroom. Frumm was speaking with opposing counsel, and when Frumm concluded his discussion, defendant was gone from the courtroom. Frumm did not see the deputy serve defendant with a copy of the order of protection. During cross-examination, Frumm testified that he was distracted with his discussion with opposing counsel and was not paying attention to what else was occurring in the courtroom. Frumm stated that the courtroom was small and he would have seen defendant being served if defendant had been served. Frumm also testified that, if a deputy had served defendant outside the courtroom in the hallway, he would not have seen it. Frumm stated that defendant was in the courtroom when the court granted the order of protection.

¶ 22 At the close of the State's case, defendant moved for acquittal. The criminal court dismissed count I of the information. On September 11, 2019, the court found defendant guilty on count II of violating the order of protection by making prohibited contact through Turner.

¶ 23 On October 10, 2019, defendant filed a motion for a new trial, which the criminal court denied on October 24, 2019. On the same day, the court sentenced defendant to 12 months' supervision and ordered him to pay a fine and to perform community service. On November 2, 2019, defendant filed a notice of appeal.

¶ 24                                    II. ANALYSIS
¶ 25                        A. Motion to Dismiss the Information
¶ 26        Defendant argues that the trial court erred by denying his second motion to dismiss the information because the civil court vacated the order of protection retroactively, and as a result, the order of protection could not form the basis for the information alleging that defendant violated the order of protection. The State counters that the criminal court properly found that the order of protection was neither vacated retroactively nor void *ab initio* and that the court was not bound by an agreement of the parties in a civil matter when determining whether to dismiss a criminal information. We agree with the State.

¶ 27        Section 114-1(a) of the Code sets forth 11 separate grounds upon which a trial court may dismiss a charge. The legislature intended this section as a comprehensive list of sufficient reasons for dismissing a charge. 725 ILCS 5/114-1(a) (West 2018). Applicable here is section 114-1(a)(8), which allows a trial court to dismiss an information where the "charge does not state an offense." *Id.* § 114-1(a)(8). The purpose of a motion to dismiss for failure to state an offense is to challenge the sufficiency of the allegations in the charging instrument. *People v. Van Syckle*, 2019 IL App (1st) 181410, ¶ 14. Regarding a trial court's dismissal of an information, we review the court's legal ruling *de novo* and we review the findings of fact to determine whether the findings are against the manifest weight of the evidence. See *People v. Marion*, 2015 IL App (1st) 131011, ¶ 25. In considering a trial court's ultimate ruling on a motion to dismiss charges, a reviewing court generally proceeds under the abuse of discretion standard. *People v. Stapinski*, 2015 IL 118278, ¶ 35.

¶ 28        We begin with the criminal court's finding that the order of protection was not vacated retroactively. Generally, judgments are to be construed like other written instruments. *In re Marriage of Breslow*, 306 Ill. App. 3d 41, 57 (1999). Although an unambiguous judgment must be enforced as drafted, an ambiguous judgment may be read in conjunction with the entire record and construed in accordance therewith. *Id.* Further, the provisions of marital settlement agreements and of dissolution judgments that incorporate such agreements are interpreted under the same rules governing the construction of contracts. *In re Marriage of Druss*, 226 Ill. App. 3d 470, 475 (1992). The parties' intent must be determined from the instrument as a whole, and it is presumed that the parties inserted each provision deliberately and for a purpose. *Id.* In addition, it is beyond the province of the court to evaluate the wisdom of the contract terms agreed to by the parties. *Id.*

¶ 29        First, we address defendant's argument that the judgment of dissolution vacated the order of protection retroactively because the marital settlement agreement incorporated into the judgment referred to the letter of agreement, which stated, "the Order of Protection shall be dismissed and/or vacated, *ab initio*." The record reveals the error of defendant's argument. Although the judgment of dissolution incorporated the marital settlement agreement, it did not incorporate the letter of agreement because the letter of agreement, unlike the marital settlement agreement, was not attached to the judgment of dissolution.

¶ 30        We note that the absence of the letter of agreement is not conclusive. See *Wiczer v. Wojciak*, 2015 IL App (1st) 123753, ¶ 36. A contract may incorporate all or part of another agreement by reference. *Id.* However, the transcript of the hearing indicates that the civil court did not intend the letter of agreement to be incorporated into its judgment. Rather, when the court questioned defendant's counsel regarding this issue, defense counsel stated, "[w]ell,

we'll bring that to the criminal court's attention, our letter of agreement." The court stated, "[t]hat's something separate from myself." Defendant's counsel replied, "Yes."

¶ 31 In addition, even if the letter of agreement had been attached to the judgment of dissolution, neither the State nor the criminal court judge were bound by the parties' agreement in a civil matter when determining whether a criminal matter should be dismissed. See *People v. Krstic*, 292 Ill. App. 3d 720, 724 (1997) ("Because the State was not involved in the initial petition for an order of protection, the State cannot be estopped from pursuing criminal prosecution based on the same facts."). Therefore, the criminal court properly ruled that the letter of agreement had no effect on the State's ability to prosecute defendant for violating the order of protection.

¶ 32 We next address defendant's argument that Judge Collins's clarifying order rendered the order of protection void retroactively. Judge Collins's order stated, "by agreement of the parties at the prove-up on August 8, 2019, the Order of Protection was vacated to the date of its inception." The criminal court found that the transcript of the hearing before Judge DeRue on August 8, 2019, clearly indicated that he did not intend the letter of agreement to be part of the judgment of dissolution. The record supports the court's finding. Further, Judge DeRue entered a form order nonsuiting the order of protection, but the form order did not indicate that the order of protection was void *ab initio*. Thus, the court properly determined that Judge Collins's clarifying order was erroneous.

¶ 33 Moreover, even if Judge Collins's clarifying order vacated the order of protection *ab initio*, rendering it void, the criminal court was not bound by the clarifying order. See *id.* Defendant relies on the statement in the letter of agreement ("the Order of Protection shall be dismissed and/or vacated *ab initio*"), which defendant contends was incorporated into the dissolution judgment by reference. *Ab initio* means "[f]rom the beginning." *People v. Holmes*, 2017 IL 120407, ¶ 12; see also Black's Law Dictionary 5 (8th ed. 2004). A circuit court order will be rendered void only where the court lacked subject-matter jurisdiction over the matter or personal jurisdiction over the parties. *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶ 32. Here, defendant does not argue that the civil court lacked jurisdiction to enter the order of protection. Therefore, it could not be rendered void. See *id.* In contrast, an order entered in error by a court having jurisdiction is merely voidable and is, therefore, not subject to collateral attack. *Id.*

¶ 34 Further, an erroneous order of a court must be obeyed until it is properly vacated. See *In re Marriage of Barile*, 385 Ill. App. 3d 752, 758 (2008) ("Having concluded that petitioner could be held in contempt for violating a voidable order, we next consider whether the trial court erred when it found that petitioner should not be held in contempt for failing to pay respondent maintenance."); see also *People v. Rodriguez*, 169 Ill. App. 3d 131, 139 (1988) ("By analogy, we consider persuasive the established doctrine that persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed even if they have proper grounds to object to this order.") Here, there is no doubt that when defendant committed the acts alleged by the State in its information, the order of protection was in effect. Thus, defendant had an obligation at that time to obey the order, and the trial court did not err by denying defendant's motion to dismiss the State's information. See *Rodriguez*, 169 Ill. App. 3d at 139.

¶ 35 Defendant relies on *People v. Barwicki*, 365 Ill. App. 3d 398 (2006), in support of his argument. In that case, the court held:

"Here, as already noted, the trial court's dismissal of the complaint was not based on factual findings made in the divorce proceeding; rather, the dismissal of the complaint was based on the fact that the order of protection had been vacated *nunc pro tunc*. And again, without a valid order of protection, there can be no prosecution for violation thereof." *Id.* at 401.

¶ 36    The State attempted to argue that the trial court—in a separate proceeding—had misapplied the *nunc pro tunc* doctrine. *Id.* However, the *Barwicki* court refused to address the propriety of the *nunc pro tunc* order, as it was issued in a separate proceeding, not appealed, and thus constituted a final order. *Id.* at 400. As such, that question was not before the court, and the *Barwicki* court accepted the validity of the order. Conversely, in this case, the issue is whether the order of protection was voided retroactively. Unlike in *Barwicki*, the ability of a court to invalidate an earlier order of protection *ab initio* (from the beginning) is squarely before us. As we explained above, it cannot. *Barwicki* does not address this issue and, thus, does not hold otherwise. Therefore, *Barwicki* provides no support for defendant's position.

¶ 37                        B. Sufficiency of the Information

¶ 38    Next, defendant argues that the trial criminal court erred by failing to dismiss the information because the information failed to recite an offense. Defendant asserts that the information failed to recite an offense because it (1) failed to recite the actual order of protection, (2) failed to recite any portion of the order of protection that created the prohibited conduct, (3) failed to fully inform defendant of the conduct that constituted the violation, (4) failed to recite with whom defendant was to have no third-party contact, and (5) will not allow defendant to plead double jeopardy to a possible future charge. Without explaining how, defendant contends that these deficiencies are in violation of section 114-1(a)(8) of the Code. 725 ILCS 5/114-1(a)(8) (West 2018) ("Upon the written motion of the defendant made prior to trial before or after a plea has been entered the court may dismiss the indictment, information or complaint upon any of the following grounds: *** The charge does not state an offense.").

¶ 39    Further, defendant provides no citations to authority or the record for these arguments. This is a clear violation of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), which requires the appellant's arguments to "contain the contentions of the appellant and the reasons therefor, *with citation of the authorities and the pages of the record relied on*." (Emphasis added.) See *People v. Campa*, 217 Ill. 2d 243, 269 (2005) (holding that the State's failure to comply with rules requiring that a party raise arguments and provide citation to legal authority or to the record in the petition for leave to appeal results in forfeiture). Because defendant failed to cite any or any page of the record regarding these arguments, they are forfeited.

¶ 40                        C. Sufficiency of the Evidence

¶ 41    Defendant contends that he was not proved guilty beyond a reasonable doubt of violating the order of protection. When faced with a challenge to the sufficiency of the evidence, we inquire whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *People v. Ehlert*, 211 Ill. 2d 192, 202 (2004). The trier of fact determines the credibility of the witnesses, decides what weight to give their testimony, resolves conflicts in the evidence, and draws reasonable inferences from that evidence. *People v. Swenson*, 2020 IL 124688, ¶ 36. The trial court's credibility determinations are entitled to great weight on appeal. *Id.* Thus, we

will defer to the trial court's findings of fact, unless such findings are against the manifest weight of the evidence. *Id.* We will reverse a conviction only if the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *People v. Miki*, 2020 IL App (2d) 190862, ¶ 54.

¶ 42 One commits the offense of violating an order of protection if (1) he knowingly commits an act prohibited by a trial court in a valid order of protection or fails to commit an act ordered by the order of protection and (2) such act occurs after the offender has been served notice of the contents of the order or otherwise has acquired knowledge of the contents of the order. 720 ILCS 5/12-3.4(a) (West 2018); *People v. Nelson*, 2019 IL App (2d) 161097, ¶ 12.

¶ 43 Defendant argues that there was insufficient evidence that he was served with or otherwise acquired knowledge of the contents of the order of protection. Defendant asserts that there is no evidence in the record that a clerk provided a file-stamped copy of the order to defendant. However, at trial, Diana testified that, on the date the order of protection was entered, she was in court with defendant and his attorney. Diana stated that, after the order was granted, she saw the "sheriff" hand defendant the order of protection in the courtroom. In addition, Fischer testified that she served defendant with the order of protection inside the courtroom. Although defense counsel Frumm testified that he did not see defendant being served, this does not negate the testimony of Diana and Fischer that defendant was served in court with the order of protection. Thus, there was sufficient evidence to support the criminal court's finding that defendant was served with or had knowledge of the contents of the order of protection. Accordingly, this finding by the court was not against the manifest weight of the evidence.

¶ 44 Defendant argues that service by Fischer was improper pursuant to section 222(c) of the Act (750 ILCS 60/222(c) (West 2018)). Defendant asserts that, since he was not served with a short form notification, he did not receive proper service of the order of protection. However, section 222(c) did not require service with a short form notification in this case. Rather, section 222(c) states:

> "*Unless respondent was present in court when the order was issued*, the sheriff, other law enforcement official or special process server shall promptly serve that order upon respondent and file proof of such service, in the manner provided for service of process in civil proceedings. Instead of serving the order upon the respondent, however, the sheriff, other law enforcement official, special process server, or other persons defined in Section 222.10 may serve the respondent with a short form notification as provided in Section 222.10." (Emphasis added.) *Id.*

Because defendant was in the courtroom and was served by Fischer in court, there was no violation of section 222(c), and defendant's arguments fail.

¶ 45 Next, defendant argues that there was no evidence that the text message defendant sent to Turner was actually sent to and received by Diana. Defendant, therefore, argues that there was insufficient proof that he made any prohibited contact. However, the record reveals that Turner testified that defendant texted him and asked him to contact Diana and to tell her to call their son "ASAP." Turner believed that the text message was from defendant because Turner knew defendant's voice and defendant had previously left Turner a voicemail message, also identifying himself, and Turner had saved the number in his phone under defendant's name. After Turner received defendant's text message, he called Diana and told her that she needed to respond "ASAP." Turner also testified that Diana received a message from him that defendant wanted her to call their son. Accordingly, there was sufficient evidence that

defendant made third-party contact with Diana, which was prohibited by the order of protection.

¶ 46    Defendant also argues that the order of protection was ambiguous because "stay away" and "third-party contact" are not written on the first page of the order of protection. However, the first page of the order of protection states that defendant "is ordered to stay away from [Diana]." Further, page four of the order provides that defendant is to "stay away" and then states:

> " 'Stay away' means for the respondent to refrain from both physical presence and non-physical contact with [Diana] whether direct, indirect (including, but not limited to, telephone calls, mail, email, faxes, and written notes), or *through third parties* who may or may not know about the Order of Protection." (Emphasis added.)

In addition, page 10 of the order states that defendant is enjoined as follows; "No physical, verbal, written or 3rd party or social media contact." Thus, the fact that the definition of "stay away" is on page four instead of page one does not render the order ambiguous; rather the order clearly prohibits defendant from contact with Diana through third parties. Thus, there was sufficient evidence to find defendant guilty beyond a reasonable doubt of violating the order of protection.

¶ 47                          D. Constitutionality of the Order of Protection

¶ 48    Defendant argues that the order of protection is unconstitutional because it is overbroad and vague such that it violates his first amendment rights. Defendant contends that the order of protection is overbroad because it prohibits activities that are protected by the First Amendment, such as contacting the police to communicate with Diana in order to pick up his property from the marital home and contacting his attorney to communicate with Diana's attorney in order to communicate with Diana about the dissolution case.

¶ 49    First, nothing in the order of protection prohibits defendant from contacting his attorney to communicate with Diana's attorney. Also, page five of the order of protection provides that defendant is given his "clothing" and "personal adornments" and that his personal property shall be transferred at the Buffalo Grove Police Department. Thus, we reject defendant's arguments.

¶ 50    Next, defendant argues that the order of protection is vague because it does not list with whom the contact is prohibited. We disagree with defendant because the order states that defendant is to stay away from Diana. A reasonable person of ordinary intelligence can discern what is prohibited in the order and who is protected. Thus, the order of protection is not unconstitutionally vague. See *Russell v. Department of Natural Resources*, 183 Ill. 2d 434, 442 (1998).

¶ 51                                    III. CONCLUSION

¶ 52    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 53    Affirmed.